Timothy **MAUSHARDT**, Plaintiff,

v.

**HARRIS CORPORATION and Metropolitan Life Insurance Company, Defendants.**

No. 92–1196–CIV–ORL–19.

United States District Court, M.D. Florida, Orlando Division.

April 12, 1994.

Charles T. Becker and Jere Kyle Bachus, Charles T. Becker, P.A., Satellite Beach, FL, for plaintiff.

Jack R. Elliott, Cabaniss, Burke & Wagner, P.A., Orlando, FL, for Harris Corp.

Jerri L. Solomon, Taraska, Grower, Unger & Ketcham, P.A., Orlando, FL, and Paul C.

Huck, Metropolitan Life Ins. Co., New York City, for Metropolitan Life.

## MEMORANDUM DECISION

CONWAY, District Judge.

This cause is before the Court after trial. This Memorandum Decision constitutes the Court's findings of fact and conclusions of law. Plaintiff, Timothy Maushardt, brought this action to recover medical benefits allegedly due him for services rendered to his son, Brian Maushardt, for treatment of a congenital heart defect. The benefits in question were denied by Metropolitan Life Insurance Company ("MetLife") as exceeding the reasonable and customary charges for similar services.

The following charges are at issue in this case:

1. Bills submitted by Dr. Thomas P. Carson:

$25.00 excluded from a $1,535.00 bill for multiple procedures rendered in Orlando, Florida, on September 21, 1990; specifically, an $800.00 bill for a heart catheterization was reduced to $775.00;

$245.00 excluded from a total of $3,345.00 in bills for multiple procedures performed in Orlando, Florida, between October 24–26, 1990; specifically, a $1,300.00 bill for a catheterization was reduced to $1,125.00 and a $300.00 bill for an aortic angiography was decreased to $230.00;

2. Bill submitted by Dr. David Bailey: $393.75 excluded from a $525.00 bill for services rendered during a percutaneous endoscopic gastrostomy tube placement performed in Orlando, Florida, on October 18, 1990; and

3. Bill submitted by University of Alabama:

$500.00 excluded from a $1,950.00 bill for anesthesiology services on October 30, 1990.

The total amount in controversy is $1,163.75. The issue presented is whether these charges should have been paid under the terms of the Harris Corporation ("Harris") medical plan of which Plaintiff was a Plan Participant. The Harris medical plan

pays for medical care, which is considered to be:

necessary—not voluntary or elective except where specifically included. Criteria developed and approved by the medical profession determines the medical necessity of care or treatment. The fact that a physician may recommend that a covered person receive health care services or be confined to a hospital does not mean that such service or confinement will be considered medically necessary or that benefits under the Plan will be payable for such expenses;

reasonable and customary—benefits will be paid on the basis of an average charge made by similarly qualified physicians for comparable services. The term is not intended to relate to the charge agreed upon between patient and doctor;

appropriate in conforming to medical standards for treatment of a particular diagnosis.

Plaintiff's Exhibit 1 at page 43.

The parties have stipulated to the amounts set forth above. In addition, the parties have stipulated, on page 12 of the Pretrial Statement (Dkt. 68), filed January 7, 1994, to the following facts:

1. Timothy Maushardt, the Plaintiff, as an employee of Harris, is a Plan Participant in the Harris medical plan, a self-funded employee welfare benefit plan subject to ERISA.

2. Brian Maushardt, the Plaintiff's infant son, is a covered dependent under the Plan.

3. Metropolitan Life Insurance Company ("MetLife") is the third-party claims administrator for the Plan.

4. Harris is the Plan administrator.

5. Brian Maushardt was born with a congenital heart defect, received treatment for this condition from Drs. Carson, Bailey, Pacifico and Milov, and the University of Alabama, Health Services Foundation.

6. The 1988 Summary Plan Description ("SPD") applies in this case.

As the third-party claims administrator, MetLife made the initial determination to exclude the disputed charges. Harris retained the right to approve or disapprove MetLife's decision, if asked to do so. Harris was not asked in this instance to review MetLife's initial determination that the charges in question exceeded an amount reasonable and customary. Harris has not raised exhaustion of administrative remedies as an issue for trial. (Pretrial Statement, Dkt. 68). That issue might have been dispositive of this case. See Byrd v. MacPapers, Inc., 961 F.2d 157, 160 (11th Cir.1992) (Eleventh Circuit precedent requires employees to exhaust ERISA administrative procedures before filing suit for ERISA benefits); Harrison v. United Mine Workers 1974 Ben. Plan & Trust, 941 F.2d 1190, 1193 (11th Cir.1991) (well-established in the Eleventh Circuit that ERISA plaintiffs must normally exhaust available administrative remedies under ERISA-governed plans before bringing suit in federal court).

■ As an initial matter, the Court must determine whether the applicable standard of review is the de novo standard or the arbitrary and capricious standard. The United States Supreme Court in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115, 109 S.Ct. at 956. The Eleventh Circuit has recently considered the issue of which standard of review applies in an ERISA case. In Kirwan v. Marriott Corp., 10 F.3d 784 (11th Cir.1994), the court reaffirmed the circuit's position that absent an express grant of discretionary authority a de novo standard applies.

This circuit has interpreted Bruch to mandate de novo review unless the plan expressly provides the administrator discretionary authority to make eligibility determinations or to construe the plan's terms. [Moon v. American Home Assurance Co., 888 F.2d 86, 88 (11th Cir.1989).] Thus, this court has applied the arbitrary and capricious standard when the plan provides that the administrators " 'determinations

shall be final and conclusive'" so long as they are "'reasonable determinations which are not arbitrary and capricious.'" [*Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1559 (11th Cir.1990), *cert. denied*, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991).] This court has also applied the arbitrary and capricious standard when the plan confers upon the administrator " 'full and exclusive authority to determine all questions of coverage and eligibility'" and " 'full power to construe the provision'" of the plan. [*Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 39 (11th Cir.1989).] On the other hand, this court has applied the *de novo* standard when the plan confers upon the administrator the authority to make initial eligibility determinations " 'according to the terms of the Plan.'" [*Baker v. Big Star Division of the Grand Union Co.*, 893 F.2d 288, 291 (11th Cir.1989).]

*Kirwan*, 10 F.3d at 788. *See also Howard v. Parisian, Inc.*, 807 F.2d 1560 (11th Cir.1987). The Harris Plan does not provide MetLife with the type of express discretionary authority which would allow this Court to review MetLife's decision on an arbitrary and capricious basis. Defendants cite to Fifth circuit case law[1] which applies an arbitrary and capricious standard to factual determinations made by a Plan Administrator even when *de novo* review is required. This case law conflicts with Eleventh Circuit cases which, while not discussing the precise issue of whether purely factual determinations of administrators should always be reviewed under an arbitrary and capricious standard, have applied a *de novo* review to factual decisions. *See Guy v. Southeastern Iron Workers' Welfare Fund, supra* and *Kirwan v. Marriott, supra.*

The Summary Plan Description (Plaintiff Ex. 1) provides, in pertinent part:

## Plan Sponsor

Harris Corporation is the sponsor of all your benefit plans.

## Plan Administrator

Harris Corporation is the official plan administrator of all the benefit plans it provides. As Plan Administrator, Harris Corporation recognizes claim decisions made by Metropolitan Life Insurance Company and Blue Cross/Blue Shield acting in the capacity of a third party administrator of the medical and dental claim benefits due under the Plan. Further details on the administration of each plan are included where appropriate in the following sections. Questions and correspondence concerning the plans or the booklets describing them may be directed to your local Personnel Department or to:

Corporate Human Resources Department
Harris Corporation
Melbourne, Florida 32919
Telephone (407) 727–9100

## Plan Legal Matters

As agent for service of legal process, Harris Corporation should be contacted concerning any plan matter of a legal nature. When Welfare benefits are provided through a group insurance contract, legal process may also be served on the insurance company for disputes that arise from the terms of the contract.

## Plans for the Future

Harris reserves the right in its sole discretion to change or end any of these plans at any time for any reason. If a welfare benefit plan is changed or ended, you will not be vested in any plan benefit or have any future rights—other than payment of covered expenses you incurred before the plan ended.

Since the Retirement Plan is a defined contribution plan it is always fully funded. Upon plan termination all participant's account balances shall immediately become fully vested.

## How to Appeal a Denied Claim for a Benefit

These are the steps you or your beneficiary can take to appeal a denied claim for either a retirement or welfare benefit.

---

1. See *Pierre v. Connecticut General Life Ins. Co.*, 932 F.2d 1552 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991); *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98 (5th Cir.1993).

If your claim for a benefit from a plan is denied, you will receive a written statement within 90 days of the date it was denied telling you the specific reason(s) for denial, the plan provisions on which denial is based, procedures for reviewing your claim and any additional information needed to process the claim and why this information is necessary.

You may ask for a review of your denied claim within 60 days after you receive your denial notice. To appeal a denied claim for a retirement benefit, you must make your request for review to the corporate administrative committee. If your claim for a welfare benefit is denied, you must request a review from the insurance company covering the plan.

Your request, which must be in writing, should include reasons why you support your claim, reasons why you think your claim should not have been denied, and any other appropriate issues or comments. You may also request in writing that copies of the plan document concerning your claim be made available for your examination. If you request a review, you will be notified in writing of the final decision within 60 days after your request is received. If your denial is upheld, the notice will also include the specific reasons for denial as well as specific references to applicable plan provisions. All appeals of denied claims will be reviewed fairly and fully.

If your welfare benefit is denied, your denial notice will tell you who to contact for further information. For further information on retirement benefit claim denial, contact:

Harris Corporation Retirement Plan
Administrative Committee
Melbourne, FL 32919
Telephone (407) 727-9100

## ABOUT YOUR WELFARE BENEFITS PLANS

### Plan Funding

Your medical and dental benefits are self-funded (with the exception of certain Blue Cross/Blue Shield contracts). Metropolitan Life Insurance Company acts as the administrator of medical and dental claims....

### Plans for the Future

Harris reserves the right in its sole discretion to change or end any of these welfare benefit plans any time for any reason. If a plan is changed or ended, you will not be vested in any plan benefit or have any future rights—other than payment of covered expenses you incurred before the plan ended.

Plaintiff Exhibit 1 at pages 67–68.

Defendant Harris Corporation relies on the following provisions from the 1985 Administrative Services Agreement entered into between it and Metropolitan Life Insurance Company (Defendant Exhibit 1, paragraphs C(3), (5), (6), (7) and (10)) as the language which expressly provides MetLife as claims administrator authority to make eligibility determinations or to construe the plan's terms.

Article 1: Services Procedures

C. Claim Services

3. Evaluate claims submitted, including professional evaluation by Metropolitan's Medical Department or Dental Consultants when required.

5. Compute and verify the amounts of benefits, and prepare and furnish to each employee an appropriate statement of the amounts of benefits.

6. Issue drafts in payment of approved claims.

7. Maintain and update statistical data which will enable Metropolitan to effectively administer the Plan's "reasonable and customary" fee basis for benefit payment.

10. Review claims to establish the dental or medical necessity for services rendered or expenses incurred if the Plan requires dental or medical necessity as a condition of payment.

Hope Fisher, Harris' manager of employees benefits, testified that MetLife's role is to make recommendations to Harris and that Harris has final authority to pay additional benefits if asked to do so. Additionally, the 1985 ASA in paragraph C(14) provides:

c. Claim Services

14. Make recommendations regarding payment or denial of appealed claims following appropriate analysis and review.

■ The Plan itself was not introduced into evidence. Plaintiff introduced the Summary Plan Description (Plaintiff Exhibit 1) and Defendant Harris introduced the 1985 Administrative Services Agreement (Defendant Harris Exhibit 1). Neither of these documents expressly confer upon MetLife discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Nor do these documents elevate MetLife to the status of fiduciary as that term is defined in ERISA. *See Howard v. Parisian, Inc.,* 807 F.2d 1560 (11th Cir.1987). This evidence presented refutes with Defendants' contention that MetLife had sufficient discretionary authority to require application of the "arbitrary and capricious standard of review to MetLife's decisions concerning medical benefits payable under the Harris Plan under an arbitrary and capricious standard.

Defendant Harris introduced the 1992 Administrative Services Agreement entered into between Harris and MetLife in further support of its position that MetLife was vested with discretionary authority. Because the 1992 ASA was not effective until August 1, 1991 after all of the claims decisions in this case had been made, it has no bearing on the question whether MetLife had discretionary authority before that date.

Based on the foregoing, the Court will review MetLife's decisions under a *de novo* standard of review.

MetLife employs the following procedures in administering claims under the Harris Medical Plan. All claims for medical benefits under the Plan are submitted for processing to MetLife. In evaluating the claim, MetLife determines whether the cost of the procedure conforms with established Reasonable and Customary (hereinafter "R & C") charges. The 1988 Summary Plan Description (hereinafter "SPD") states that "[t]he Harris medical plan pays for medical care which is considered to be: reasonable and customary...." 1988 SPD at 43.

R & C charges are the lesser of an aggregate of the charges other health care providers charge for the same procedure in the same geographic area or the amount that a particular provider charges for a specific procedure.

MetLife determines the R & C values by utilizing its database of charges that have been processed through the claims system. Using statistical methods, MetLife's actuarial department compiles this data to determine a standard R & C amount for each procedure in each geographic location. If there is not enough data to establish a standard R & C value (at least 25 charges), MetLife sets a fee using other methods which take into account the level of specialized knowledge and training required to perform the procedure as well as the geographic location where the procedure was conducted.

For purposes of the R & C values, MetLife has divided the United States into 282 geographic areas. Each area consists of a contiguous region of 3–digit zip code groupings with a similar health care charge history.

Claims are submitted to MetLife on a Health Insurance Claim Form. On this form, the health care provider enters its name, location, patient information and the type of service rendered. The service rendered is entered using the American Medical Association's standardized Physicians' Current Procedural Terminology coding structure which establishes a separate code number for each type of procedure. (Defendant Harris Exhibit 18). Additionally, the provider lists his/her charge for the procedure, and, if necessary, a "modifier." A "modifier" is used by the provider to identify qualifying circumstances which significantly impact the character of the service provided. For example, a modifier can be used to identify when a procedure is unusually complex or difficult, as when the patient is very young or very old. MetLife uses the modifier in conjunction with the provider's medical reports to determine if the provider is entitled to any additional benefits over the R & C values.

When MetLife receives the claim form, the information is entered in its computer system to determine what benefits are due. Specifically, the computer analyzes the claim to

determine if it comports with the standardized R & C charges for that provider's geographic location. If the charge is less than the R & C charge, the bill is covered in full and paid pursuant to the terms of the Plan. If the bill is greater than the R & C allowance, only the R & C amount will be covered. Finally, if a modifier is included with the claim, MetLife will consider it when determining whether the bill should be paid in excess of the R & C charge.

After processing the claim, MetLife mails the payment to the participant, or the provider if an assignment of benefits exists. If the payment is not sent directly to the participant, the participant is sent either a letter or an Explanation of Benefits (hereinafter "EOB") notice. (See, e.g., Plaintiff's Exhibit 66). The EOB notice explains what portion of the claim was paid and what, if any, portion was denied. It also explains how the participant can file an appeal.

A claim decision can be reviewed in two ways: (1) a participant can request an administrative review to determine whether the information received by MetLife was properly entered in the computer; or (2) if the health care provider or participant submits additional information (operative reports, office notes, etc.), the claim will be submitted to MetLife's medical department for review by a physician to determine if it warrants a payment exceeding the R & C charge. If the operative report is included when the original claim is made, the claim will be forwarded directly to the medical department for review. If the medical department reviews the claim, MetLife will send a second EOB notice advising whether any additional sums will be forthcoming. Thereafter, if the participant feels there is other material which MetLife should consider, he or she can request a second review by submitting this additional material. After this second review, the participant is again provided an EOB notice stating whether any additional amounts will be paid.

In the instant case, MetLife followed the above-described procedures in making its determination that the disputed charges exceeded the R & C allowances for the services rendered.

## I. DR. THOMAS P. CARSON

■ Dr. Carson submitted two sets of bills which were reduced, in part, on the basis that they exceeded the R & C charge for the services provided.

First Bill

1. Date of Service: August 7, 1990
2. Location of Service: Orlando, Florida
3. Date Claim Submitted: September 20, 1990
4. Total Claim Submitted: $1,535.00
5. Amount Paid: $1,510.00
6. Amount Excluded: $25.00
7. Procedure(s): Multiple procedures were performed. However, only the bill for a heart catheterization was reduced.
8. MetLife's Review: A bill for $800.00 for a heart catheterization was submitted to MetLife and reduced to $575.00 based on the R & C charge for this service. An EOB notice was sent on August 31, 1990 advising of this payment. However, on September 20, 1990 an operative report was received by MetLife's medical department. Based on a review of this report, which indicated the complexity of the operation, additional payments were allowed on October 12, 1990. This brought the total paid to $775.00 (only $25.00 excluded).
9. MetLife's Review was triggered when Plaintiff telephoned MetLife after receiving the first EOB. MetLife asked Plaintiff to have Dr. Carson send a copy of the operative report, which he did.
10. Upon receipt of the second EOB, Plaintiff again called MetLife about the excluded $25.00. MetLife advised Plaintiff to send additional information to MetLife. Not knowing what additional information was needed or available, Plaintiff took no further action before filing suit. Both the EOB form and the Harris Summary Plan Description instructed Plaintiff to request a review in writing.

Second Bill

1. Dates of Service: October 24–26, 1990
2. Location of Service: Orlando, Florida
3. Date Claim Submitted: November 5, 1990
4. Total Claim Submitted: $3,345.00
5. Amount Paid: $3,100.00
6. Amount Excluded: $245.00
7. Procedure(s): Multiple procedures were performed. However, only bills for a catheterization and an aortic angiography were reduced.
8. MetLife's Review: A $1,300.00 bill for a catheterization was submitted to MetLife and was reduced to $1,125.00. Also, a bill for $300.00 for an aortic angiography was submitted and reduced to $230.00. These reductions were based on the R & C charges for these services. An EOB notice was sent on November 19, 1990 advising of these payments. (Plaintiff's Exhibit 6c). On January 10, 1991, MetLife received an operative report along with the participant's EOB notice. MetLife directed these documents to its medical department for review. On February 28, 1991, after review, a second EOB notice was sent advising that no additional benefits were due. (Plaintiff's Exhibit 6b).
9. After receiving the second EOB, Plaintiff again called MetLife, which requested additional information. Plaintiff took no further action before filing suit.

Plaintiff presented the deposition testimony of Dr. Carson, who testified that he was familiar with reasonable and customary charges in the community and that in his opinion, his bill for services was reasonable and customary. The Plan, however, specifically provides that the term "reasonable and customary" is not intended to relate to the charge agreed upon between patient and doctor." MetLife and Harris presented competent evidence to support MetLife's determination that the fees charged by Dr. Carson exceeded what was payable under the terms of the Plan. The Plan provides only for payment of an average charge. Any amount above the average charge, even if the amount charged is reasonable and customary, is not covered under the Plan. Plaintiff is, therefore, not entitled to recover any additional sums for the medical bills submitted by Dr. Carson.

## II. *DR. DAVID BAILEY*

█ Dr. Bailey submitted a bill for assisting Dr. David E. Milov during a percutaneous endoscopic gastrostomy tube placement. Dr. Bailey's bill was reduced on the basis that it exceeded the R & C charge for an assistant surgeon for this procedure.

1. Date of Service: October 18, 1990
2. Location of Service: Orlando, Florida
3. Date Claim Submitted: November 26, 1990
4. Total Claim Submitted: $525.00
5. Amount Paid: $131.25
6. Amount Excluded: $393.75
7. Procedure(s): Percutaneous endoscopic gastrostomy tube placement.
8. MetLife's Review: Dr. Bailey assisted Dr. Milov during a percutaneous endoscopic gastrostomy tube placement. Dr. Bailey submitted a bill for $525.00 for his part in the surgery. Based on MetLife's R & C statistical data, an assistant surgeon was entitled to receive 25% of the R & C charge for the surgery provided. In this case, the R & C charge for this operation was $525.00. Therefore, MetLife paid Dr. Bailey 25% of $525.00 or $131.25. On December 7, 1990, an EOB notice was sent advising of this payment. On February 28, 1991, an operative report was submitted including the EOB notices for both Dr. Milov and Dr. Bailey. This operative report detailed the surgical procedure performed by Dr. Milov. However, it did not identify Dr. Bailey as the assistant surgeon or otherwise document his participation in the surgery. The operative report was submitted to MetLife's medical department for review. The medical department recommended Dr. Milov's bill be covered in full. It did not recommend that Dr. Bailey receive any additional benefits. Neither Plaintiff nor MetLife requested additional information from Dr. Bailey. Plaintiff took no further action before filing suit.
9. Both the EOP and the Summary Plan Description instructed Plaintiff to submit a request for review in writing.
10. The testimony of Faustino Mayo was that MetLife no longer pays 25% for an assistant surgeon under the medical necessity provision of the policy.

Reviewed *de novo*, the evidence supports Plaintiff's position that Dr. Bailey should have received payment of 25% of the R & C charge of the primary surgeon. Plaintiff is entitled to recover an additional sum of $103.25.

### III. UNIVERSITY OF ALABAMA, HEALTH SERVICES FOUNDATION

1. Date of Service: October 30, 1990
2. Location of Service: Birmingham, Alabama
3. Date Claim Submitted: December 3, 1990
4. Total Claim Submitted: $1,950.00
5. Amount Paid: $1,450.00
6. Amount Excluded: $500.00
7. Procedure(s): Anesthesiology
8. MetLife's Review: A $1,950.00 bill was submitted for anesthesiology services rendered at the hospital. MetLife originally excluded $700.00 on the basis that the bill, by that amount, exceeded the R & C charge for these services. On December 14, 1990, an EOB notice was sent advising of the reduced payment. On January 14, 1991, the Plaintiff telephoned requesting a review. During this review, it was discovered that modifiers were included on the claim form but that they had not been properly itemized. These modifiers allowed the bill to be considered for additional payment. Based on this review, MetLife authorized an additional $200.00 on January 21, 1991, making the total excluded only $500.00. Neither Plaintiff nor MetLife requested additional information from the hospital. Plaintiff took no further action before filing suit. Both the EOB and the Summary Plan Description instructed Plaintiff to request a review in writing.

Mr. William G. Green testified by deposition concerning the anesthesiology bill from University of Alabama. Mr. Green is the executive administrator for the department of anesthesiology at the University of Alabama, Birmingham. He is familiar with reasonable and customary charges for the type of anesthesiology services provided to Brian Maushardt. The University's policy regarding billing is to charge above the average fee.

No testimony was presented by Plaintiff to dispute MetLife's contention that it paid the "average charge made by similarly qualified physicians for comparable services."

It is, therefore, ORDERED:

1. MetLife is not a "fiduciary" as that term is defined under 29 U.S.C. § 1133, subject to suit for its decision denying benefits. At the time the decisions in this case were made, MetLife performed claims processing, investigative and record keeping duties. MetLife did not insure the Plan nor did it provide a full and fair review of claim denials as required of a Plan administrator under 29 U.S.C. § 1133(2). In this case, Plaintiff's sole cause of action was against Harris and the Plan Administrator.

The Clerk is therefore directed to enter judgment in favor of Defendant, Metropolitan Life Insurance Company, and against Plaintiff, Timothy Maushardt.

2. Harris Corporation is liable to Plaintiff, Timothy Maushardt for the sum of $103.25 plus interest at 4.51% from November 26, 1990, in the amount of $15.72. The Clerk is directed to enter judgment in Plaintiff's favor in the amount of $118.97 and against Defendant Harris Corporation.

DONE AND ORDERED.