Gary **KIRWAN**, Plaintiff–Appellant,

v.

**MARRIOTT CORPORATION**, a Delaware Corporation, Defendant–Appellee.

No. 92–2490.

United States Court of Appeals, Eleventh Circuit.

Jan. 4, 1994.

Edward R. Gay, Orlando, FL, for plaintiff-appellant.

Mary Applegate Lau, Lau, Lane, Pieper & Asti, Tampa, FL, for defendant-appellee.

Before KRAVITCH and BIRCH, Circuit Judges, and CLARK, Senior Circuit Judge.

CLARK, Senior Circuit Judge:

Appellant Gary Kirwan brought this action against appellee Marriott Corporation ("Marriott"), his former employer, to recover long-term disability benefits under a disability plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1381. The district court granted summary judgment in favor of Marriott, holding that the plan administrator's denial of benefits was not arbitrary and capricious. We conclude that the district court erred in applying an arbitrary and capricious, rather than a *de novo,* standard of review to the administrator's determination of benefits. Under a *de novo* review, there are genuine issues of material fact that preclude summary judgment. Accordingly, we reverse.

## BACKGROUND FACTS

Marriott hired Kirwan in November of 1980. Kirwan worked in various capacities for Marriott's Family Restaurants Division from 1980 to 1989 and was eventually promoted to district manager. According to Kirwan's supervisor, Kirwan had an excellent employment record and was "clearly a capable and dedicated manager"; however, beginning in mid–1988, Kirwan "repeatedly violated company policies, made error in judgment and generally failed to perform his responsibilities as a District Manager."[1] In February 1989, Kirwan accepted a transfer and demotion to a restaurant general manager position. Several months later, on June 23, 1989, Marriott terminated Kirwan, citing as reasons Kirwan's failure to work scheduled days and violation of management policy.

The parties have stipulated that, since 1982, Kirwan has suffered from a condition known as Huntington's chorea. This condition causes abnormal and involuntary limb movements, often referred to as "choreiform movements." Kirwan's medical records indicate that, as earlier as 1983, he began taking a drug known as Hadol to control his movement disorder. In 1988, Kirwan consulted Dr. Hugh R. Howell, a neurologist, about the condition. Dr. Howell's records indicate that the Hadol was making Kirwan drowsy and was no longer adequately controlling the movement disorder. Specifically, the records state:

> At the present time, we will give him a trial with Reserpine to take daily to see if this would eliminate the movements. He has been on Hadol which seemed to help. For some reason, he felt that this continued to make him more drowsy and he was having to increase the dosage to control his symptoms.

> He was seen four weeks later and was tolerating the Reserpine quite well. There had been no change in the choreiform movements.... The Reserpine was increased for the next ten days and then to be increased to three tablets twice a day and he was to be seen again in six weeks.

> He was seen on 7–1–88 at which time there was no change in his Reserpine. He had increased the dosage up to four a day which tended to make him drowsy and he dropped back on the medication to two tablets a day. Despite increase in the

---

1. Affidavit of James Kiser, R1–18–2.

dosage, there had been no change in the movement disorder.

.    .    .    .    .

The Reserpine was discontinued and he was given a trial with Valium 2 mg. at bedtime and to start with Elavil 10 Mg. at bedtime. He was to let me know by telephone within 5 or 6 days as to how this was being tolerated and to see if this would begin to control his choreiform movements....

The patient did not return for follow up and did not call. His medication ran out in August 1988 and he called for a refill. He was given a few and scheduled for an appointment, however, he did not keep the appointment and has not been seen since 7–1–88.

... His diagnosis remains the same: Chronic choreiform type movement disorder, etiology undetermined.[2]

As explained above, Kirwan was transferred in February of 1989.

The next entry in Kirwan's medical records is dated February 8, 1990, when he consulted Dr. Katherine Bencze. Dr. Bencze's records state:

Initially [Kirwan] was put on Hadol 1 mg QID but it affected his intellect and patient stopped taking it. He lost his Job last July due to his movement disorder.

.    .    .    .    .

I have recommended to take Baclofen 5 mg at bedtime and increase it gradually to TID as tolerated since it has been shown that Baclofen slows down the progression of this condition. Patient will return to see me in about 1 month.[3]

Dr. Bencze's records dated March 9, 1990, provide:

Patient returns for a brief [follow-up] visit today. He took Baclofen 2.5 mg b.i.d. and it seems to help him. He feels much bet-

ter and he has gained some weight. He is applying for total disability and social security.[4]

While employed with Marriott, Kirwan was covered by Marriott's Long Term Disability and Salary Continuation Plan. The Plan provides for the payment of benefits in the event "a Participating Employee becomes subject to a Total Disability."[5] The Plan defines Disability as "a condition of continuous disability by bodily injury or disease for which the Participating Employee is under the regular care of a Physician."[6] Total Disability is defined as "a Disability the result of which is that a Participating Employee is unable to perform any job for wage or profit for which the Participating Employee is or may become qualified by training, education or experience."[7] Participation in the Plan automatically terminates on "the date of termination of the Participating Employee's employment" with Marriott.[8]

On February 17, 1990, after having consulted with Dr. Bencze, Kirwan submitted a claim for long-term disability benefits to the Plan's Administrator. A portion of the claim form was completed by Dr. Bencze, who attested that Kirwan was "continuously and totally unable to work from 2/8/90 to present."[9] After gathering and reviewing Kirwan's medical records, the Administrator denied Kirwan's claim for benefits, citing the following reasons:

We have no documented evidence of total disability on or before your termination date of June 23, 1989. Medical records from Dr. Howell indicate that you were last seen by him on July 1, 1988.

There is no documentation of treatment from that point until Dr. Bencze saw you in February of 1990.

Participation in the Long Term Disability Plan ceased on June 23, 1989. Dr. Bencze indicated on your claim form that you were totally disabled beginning February 8,

---

2.  R1–17 Exh. D.

3.  *Id.*

4.  *Id.*

5.  R1–9 Exh. A ¶ 5.2.

6.  *Id.* at ¶ 1.6.

7.  *Id.* at ¶ 1.24.

8.  *Id.* at ¶ 2.7(b).

9.  R1–17 Exh. B.

1990, at which time you were no longer a Plan participant and therefore not eligible for benefits.

You have applied for and received Unemployment Compensation during the same period for which you are claiming disability benefits. In order to be approved for Unemployment Compensation, you must be ready and *able to work*.[10]

In accordance with the provisions of the Plan, Kirwan requested and received review of the claim denial. After review, the Administrator again denied the claim.

Kirwan then brought suit under ERISA, specifically, 29 U.S.C. § 1132(a)(1)(B), to recover the long-term disability benefits. Marriott filed a motion for summary judgment. In support of the motion, Marriott submitted the affidavit of Kirwan's supervisor, who attested that he was aware that Kirwan had a physical condition that caused involuntary body movements but that the condition had no effect on Kirwan's job duties. He further attested that "Kirwan never mentioned his condition to me, never suggested that he was impaired in any way by it, and it never seemed to me to be a factor of any sort in the day to day performance of his job duties."[11] In opposition to the motion for summary judgment, Kirwan filed the affidavit of Dr. Bencze, who attested:

> I stated on [Kirwan's claim] forms the "patient continuously and totally unable to work from 2/8/90 to present". The date of 2/8/90 was stated as that date was the first date that Mr. Kirwan visited my office regarding his condition of Huntington's Chorea, therefore, I could not state with certainty any ability to work prior to that date. However, in my medical opinion I cannot exclude the fact that Mr. Kirwan may have been totally unable to work due to his condition on the date of his termination of employment which I understand occurred in June of 1989.[12]

Kirwan also filed his own affidavit. He attested that his job difficulties were due to Huntington's Chorea and the medication he had to take to control that condition. He further attested that he did not obtain a physician's certification of disability in June 1989 because Marriott was well aware of his condition. Specifically, he said:

> It was in January of 1989 that I insisted on a transfer and informed [my supervisor] that the stress of the job and the 60 to 70 hour work week was making my movement as a result of Huntington's Chorea more pronounced. I was having mental and physical difficulties which resulted in my judgment being impaired and short term memory loss.

> .    .    .    .    .

> It is my belief that I was unable to work as of the day of my termination on June 23, 1989, and in fact was terminated due to the problems I was having which result from my condition of Huntington's Chorea which is a permanent condition.

> .    .    .    .    .

> I was on medication at the time of my termination to attempt to reduce my movements based on a prescription from Dr. Hugh R. Howell. Considering this condition is hereditary, permanent and incurable, there is no need for regular physicians care other than obtaining medication to attempt to reduce the movement which I did and still do.[13]

Along with his affidavit, Kirwan submitted a letter from the Social Security Administration indicating that he was entitled to Social Security benefits. The letter states: "We have determined that you became disabled on 6/23/89."[14]

The district court granted Marriott's motion for summary judgment. The court determined that the "express language [of the Plan] gives the Administrator discretionary authority";[15] accordingly, the court applied an "arbitrary and capricious," rather than a "*de novo*," standard of review to the Admin-

---

10. *Id.* Exh. E.

11. R1–18 ¶ 7.

12. R1–21 ¶ 3.

13. R1–22.

14. R1–22 Exh. C.

15. R1–26–5.

istrator's denial of benefits. The district court concluded that Kirwan had failed to present medical evidence establishing that he was disabled on June 23, 1989, and, therefore, that the Administrator's denial of benefits was not arbitrary and capricious. Kirwan filed this appeal.

## DISCUSSION

■ Kirwan argues that the district court should have applied a *de novo* standard of review to the Administrator's denial of benefits. We agree. In *Firestone Tire and Rubber Co. v. Bruch*,[16] the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefits plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[17] The Supreme Court subjected Firestone's denial of benefits to *de novo* review because "there is no evidence that under Firestone's ... plan the administrator has the power to construe the uncertain terms or that eligibility determinations are to be given deference."[18]

This circuit has interpreted *Bruch* to mandate *de novo* review unless the plan *expressly* provides the administrator discretionary authority to make eligibility determinations or to construe the plan's terms.[19] Thus, this court has applied the arbitrary and capricious standard when the plan provides that the administrators " 'determinations shall be final and conclusive' " so long as they are

" 'reasonable determinations which are not arbitrary and capricious.' "[20] This court has also applied the arbitrary and capricious standard when the plan confers upon the administrator " 'full and exclusive authority to determine all questions of coverage and eligibility' " and " 'full power to construe the provision' " of the plan.[21] On the other hand, this court has applied the *de novo* standard when the plan confers upon the administrator the authority to make initial eligibility determinations " 'according to the terms of the Plan.' "[22]

The Plan at issue in this case provides that Marriott, as the Named Fiduciary, has "authority to control and manage the operation and administration of the Plan."[23] Although the Plan does not specifically grant the Administrator the authority to deny claims, the benefit claim procedure described in the Plan contemplates that the Administrator will perform that function.[24] Finally, ¶ 8.3 of the Plan provides:

> The Administrator may promulgate such rules and regulations as deemed necessary and proper to interpret or administer the Plan. Such rules and regulations shall be communicated to Participants in compliance with ERISA requirements.[25]

The Administrator has not promulgated any rules or regulations.

This language falls short of the express grant of discretionary authority necessary to trigger the arbitrary and capricious standard

**16.** 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)

**17.** *Id.* at 115, 109 S.Ct. at 956.

**18.** *Id.* at 111, 109 S.Ct. at 955.

**19.** *Moon v. American Home Assurance Co.*, 888 F.2d 86, 88 (11th Cir.1989) ("the circuit courts which have found that particular ERISA plans granted discretion to plan administrators or fiduciaries, in cases decided after *Firestone*, have uniformly rested this finding upon *express language* of the ERISA plan before them"); *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 38–39 (11th Cir.1989) (benefit determination "must be reviewed de novo unless the plan expressly gives the administrator discretionary authority to make eligibility determinations or to construe the plan's terms"). *But cf. Baker v. Big Star Division of the Grand Union Co.*, 893

F.2d 288, 292 (11th Cir.1989) (citing *Moon*, court noted "that a panel of this court may have determined that express language of discretionary authority is necessary before the arbitrary and capricious standard is applicable").

**20.** *Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1559 (11th Cir.1990), *cert. denied*, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991).

**21.** *Guy*, 877 F.2d at 39.

**22.** *Baker*, 893 F.2d at 291.

**23.** R1–9 Exh. A ¶ 8.1.

**24.** *Id.* at ¶ 7.2.

**25.** *Id.* at ¶ 8.3.

of review. Marriott may "control and manage" the Plan, but it must do so in accordance with the terms of the Plan, and there is no grant of authority to construe these terms. Faced with virtually identical language, the Seventh Circuit has applied the *de novo* standard of review.[26] The Plan contemplates that the Administrator will determine whether a benefit is properly payable; however, there is no grant of discretion to accompany this mandatory function and no indication that the Administrator's determination is to be accorded deference. Faced with a similar provision, the Eighth Circuit has said:

> [I]f an action is mandatory under the plan or if the plan is silent with regard to the administrator's rule, the action taken should be reviewed [*de novo*]. Language requiring trustees to make a final determination of an employee's eligibility under the plan does not necessarily confer discretionary authority to render decisions with regard to ambiguous provisions of the plan.
>
> Paragraph 16.01 of the Fund's plan provides that the trustees have the final authority to determine all matters of eligibility for the payment of claims. As noted above, this section merely describes the trustees' mandatory role in accepting or rejecting claims submitted to the Fund. It does not grant to the trustees the authority to construe ambiguous terms.[27]

Finally, the grant of authority in ¶ 8.3 to promulgate rules and regulations is merely a grant of administrative powers. The Third Circuit has held that even a broad grant of administrative powers is insufficient to trigger application of the arbitrary and capricious standard.[28] Although ¶ 8.3 permits the Administrator to promulgate rules to "interpret and administer" the Plan, we do not read this as a grant of authority to construe ambiguous terms in the Plan. The Plan is otherwise silent as to the Administrator's authority to construe terms. When a plan is silent or ambiguous as to an Administrator's discretionary authority, we will apply the *de novo* standard of review.[29] As the Fifth Circuit has said:

> Since *Bruch*, we have had several occasions to consider ERISA instruments that granted precise discretionary authority. Significantly, the express language in those instruments is unambiguous in its design to grant discretion regarding entitlements to the fiduciary or administrator.[30]

The Plan before us does not contain express language "unambiguous in its design" to give the Administrator discretionary authority to determine eligibility benefits or to construe the terms of the Plan. Accordingly, the district court erred in applying the arbitrary and capricious standard of review to the Administrator's determination.

▪ Marriott argues that, even applying *de novo* review to the Administrator's determination, summary judgment is appropriate. We disagree. In this circuit, a district court conducting a *de novo* review of an Administrator's benefits determination is not limited to the facts available to the Administrator at the time of the determination.[31] The district

---

**26.** *Michael Reese Hospital and Medical Center v. Solo Cup Employee Health Benefit Plan*, 899 F.2d 639, 641 (7th Cir.1990) (applying *de novo* review where plan provided that " 'the Company shall have authority to control and manage the operation and administration of the Plan' ").

**27.** *Baxter v. Lynn*, 886 F.2d 182, 188 (8th Cir. 1989) ("applying *de novo* standard of review").

**28.** *See Luby v. Teamsters Health, Welfare and Pension Trust Funds*, 944 F.2d 1176, 1180 (3d Cir.1991) ("[T]he Plan's general grant of administrative powers to Plan Trustees does not refer specifically to any power to decide disputes between beneficiary claimants. Likewise, the Plan neither states nor implies that fact-based beneficiary determinations are to be accorded deference on review.").

**29.** *See Cathey v. Dow Chemical Co. Medical Care Program*, 907 F.2d 554, 558–59 (5th Cir.1990), *cert. denied*, 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991).

**30.** *Id.* at 559.

**31.** *Moon*, 888 F.2d at 89. There is a split among the circuits as to whether a *de novo* review should include facts not before the plan administrator. *See Quesinberry v. Life Insurance Co. of North America*, 987 F.2d 1017, 1022–25 (4th Cir. 1993) and cases cited therein. This circuit and the Third Circuit have squarely held that *de novo* review includes facts not before the administrator. *Luby*, 944 F.2d at 1184–85 (citing *Moon*, Third Circuit held "that a district court exercising *de novo* review over an ERISA determination

court in this case had before it Kirwan's medical records indicating that he was having problems with his medication in mid-1988, Kirwan's affidavit attesting that he was disabled on the date of his termination, Dr. Bencze's affidavit attesting that Kirwan may have been totally disabled on that date, and the Social Security Administration's determination that Kirwan was totally disabled on that date.[32] We find that this evidence presents a genuine issue of material fact as to whether Kirwan was totally disabled on the date of his termination.[33] Accordingly, the district court erred in granting summary judgment in favor of Marriott.

## CONCLUSION

For reasons stated above, the district court's decision is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

---

between beneficiary claimants is not limited to the evidence before the Fund's Administrator'').

**32.** A district court may consider the Social Security Administration's determination of disability in reviewing a plan administrator's determination of benefits. *See Pierce v. American Waterworks Co., Inc.,* 683 F.Supp. 996, 1000 (W.D.Pa. 1988) (relying on Social Security Administration's determination of disability, among other things, to hold that administrator's denial of benefits was arbitrary and capricious); *Ferguson v. Greyhound Retirement & Disability Trust,* 613 F.Supp. 323 (D.C.Pa.1985) (relying on Social Security Administration's determination of disabili-

ty, among other things, to deny defendant's motion for summary judgment).

**33.** Marriott argues that Kirwan is not entitled to benefits because he has not produced medical documentation proving that he was disabled on June 23, 1989. In support of this argument, Marriott relies on language from a *summary* of the Plan, rather than on language from the Plan itself. Appellee's Brief at 26; R1–9 Exh. A Plan summary at 16. Both the summary and the Plan specifically provide that the language of the Plan controls over any language in the summary. R1–9 Exh. A ¶ 10.3.