John David McNUTT, Plaintiff,

v.

J.A. JONES CONSTRUCTION COMPANY, Jones Group, Inc., Metric Constructors, Inc., and Aetna Life Insurance Company, Defendants.

No. CV 196–162.

United States District Court,
S.D. Georgia,
Augusta Division.

Dec. 16, 1998.

Charles L. Wilkinson, III, Augusta, GA, for John David McNutt, plaintiff.

Tommy T. Holland, Burke Johnson, Carter & Ansley, Atlanta, GA, for J.A. Jones Construction Company, Jones Group, Inc., Metric Constructors, Incorporated, defendants.

## ORDER

BOWEN, Chief Judge.

In the above-captioned case brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), Defendants have filed a Motion for Summary Judgment. Upon consideration of the briefs submitted by counsel and oral argument, Defendants' Motion for Summary Judgment is hereby **GRANTED IN PART** and **DENIED IN PART** for the reasons set forth below.

## I. Background

On August 2, 1990, a tractor-trailer collided with Plaintiff's disabled pickup truck on I–20, east of Columbia, South Carolina. Plaintiff was seriously injured in the collision. Plaintiff did not go to the hospital immediately after the accident, but he did see Dr. Ben Estes, an Augusta neurosurgeon the following day. Dr. Estes continued to treat Plaintiff after the accident, seeing him forty-three times during the next several years. Dr. Estes contends that Plaintiff is disabled as a result of the injuries he suffered in the accident.

At the time of the accident, Plaintiff was employed as a project superintendent with Defendant Metric Constructors, Inc. (Metric), a unit of Jones Group, Inc. (Jones). Defendant Aetna Life Insurance Company (Aetna) provided health, life, and long-term disability coverage under a group plan with Jones. Plaintiff seeks to recover long-term disability benefits he believes Defendants owe him under this disability insurance policy. Plaintiff also alleges that a penalty should be assessed against the Defendants pursuant to ERISA for their refusal to provide him with the claim forms necessary to file his disability claim.

There are two primary documents detailing Plaintiff's disability insurance policy: the booklet "Your Group Plan" and a brochure "Disability Benefits." Jones provided Plaintiff with copies of both documents. The "Disability Benefits" brochure is designated the Summary Plan Description (SPD) pursuant to ERISA, and the "Your Group Plan" booklet provides more detail about the policy. The SPD indicates that plan participants should refer to other policy documents for details about the plan.[1] The SPD does not provide any deadlines for filing long-term disability claims and does not indicate any consequences for failing to file a proof of loss within a specific time period. The SPD also fails to mention any contractual statute of limitations applying to claims or any other terms which would disqualify an insured from receiving benefits for failure to comply with plan deadlines.

Time limits for filing a claim, however, are listed in the "Your Group Plan" brochure. Specifically, "Your Group Plan" states:

Written proof of total disability under long term disability coverage must be given to the Insurance Company within 90 days after the end of the waiting period shown in the Plan Summary.... Late proof may be accepted only if, under the particular circumstances, it was furnished as soon as was reasonably possible, and in any event except in the absence of your legal capacity, within one year after the time it was otherwise required. No action at law or equity may be brought to recover on any group policy after three years from the time written proof is required to be furnished.

On October 2, 1991, Plaintiff filed his first written proof of loss. This proof of loss was made after the 90–day deadline had passed but within the one-year grace period for filing proof of loss statements. Plaintiff filed suit on September 12, 1996, four years (even if the grace period is used) after he was required to file written proof under the contractual statute of limitations. This late filing violated the three-year contractual statute of limitations stated in the "Your Group Plan" brochure.

Jones and Aetna's contractual relationship is governed by the terms of the Administrative Services Contract (ASC). The ASC provides that:

Aetna in performing its obligations under this Contract is acting only as agent of the Contractholder and the rights and responsibilities of the parties shall be determined in accordance with the law of agency except as otherwise herein provided. The Contractholder hereby delegates to Aetna authority to make determinations on behalf of the Contractholder with respect to benefit payments under the Plan and to pay such benefits. In connection with such determinations, Aetna acknowledges that it is acting as fiduciary solely for benefit determination, benefit processing and review, and appeals of denied claims for ben-

---

1. Specifically, the SPD states that "[i]n the event of any questions regarding the terms of the plan or proper payment of benefits, further informa- tion may be obtained from the company who can provide you with a booklet/certificate which will contain a complete description of the plan."

efits under the Federal "Employee Retirement Income Security Act of 1974" (ERISA). For the purposes of ERISA and any applicable state legislation of similar nature, the Contractholder shall, however, be deemed the Administrator of the Plan.

During the first five years of a participant's disability, Jones pays any disability benefits from its own funds, and Aetna provides claim services pursuant to the administrative services contract. If an insured is still disabled after five years, Aetna pays the insured's disability payment from its own funds.

Defendant contends that the plan delegates discretionary authority for determining the validity of claims to Aetna under the ASC. Plaintiff, however, contends that Nelson Taylor of Jones Group makes the initial determinations concerning the filing of a claim, eligibility for disability benefits, and whether to give a claim form to a plan participant or beneficiary.

The plan also includes a definition of "total disability" that defines the term as a function of an insured's ability to work. Defendants contend that Plaintiff failed to meet the definition of a totally disabled employee. The "Your Group Plan" brochure defines "total disability" as follows:

> During the first 24 months of a period of disability, you will be considered unable to work if you cannot work at the type of occupation in which you normally engage. After the first 24 months of a period of total disability, you will be considered unable to work only if you are unable to work at any reasonable occupation.

As a project superintendent with Metric, Plaintiff contends that his job involved operating heavy construction equipment and explosives as well as paperwork and record keeping. After his accident, Plaintiff remained at home for two weeks before returning to work and working twenty-one days. Plaintiff contends that he only returned to work in order to complete a project under his supervision. After returning to work, Plaintiff took vacation time on November 7, 1990, and told Metric that he intended to stay on vacation until December 11, 1990. Plaintiff contends that he took this vacation because he was unable to perform his job without severe pain and that the pain made him unable to concentrate and focus on his work. Before Plaintiff's vacation expired, however, he was laid off effective November 30, 1990.

On October 2, 1991, Plaintiff sent the person in charge of group insurance at Metric, Harriet Pratt, Dr. Estes's medical report. In this letter, Plaintiff also requested the proper forms necessary for him to apply for long-term disability benefits. On December 2, 1991, C. Nelson Taylor, the Employee Benefits Manager at Jones, responded to Plaintiff's letter to Harriet Pratt and stated that Plaintiff was not disabled under the disability policy because he returned to work after his accident. Defendants did not provide Plaintiff with the requested forms.

In April of 1992, Plaintiff applied for Social Security disability benefits and cited the date of the accident, August 2, 1990, as the onset date. The Social Security Administration awarded Plaintiff the maximum amount of retroactive benefits allowable.

On September 15, 1994, Plaintiff wrote to C. Nelson Taylor, the Employee Benefits Manager for Jones, and again requested the application forms for disability benefits. In his letter, Plaintiff also stated the reasons why he was disabled and entitled to long-term disability benefits. Taylor wrote to Plaintiff on September 29, 1994, and informed Plaintiff that Jones's position was unchanged from its earlier response and that the claim was beyond the one-year time limit for filing a disability claim with Aetna. Taylor included a copy of the SPD entitled "Disability Benefits" but did not include the application forms.

Plaintiff then wrote letters to Thomas Tawyer at Aetna in May and June of 1995 asking for more information and complaining that he had been unable to obtain the necessary application forms. Jones sent the claim forms to Plaintiff on July 20, 1995.

Plaintiff submitted the completed claim forms to Jones on October 6, 1995. Jones forwarded these forms to Aetna. On November 2, 1995, Tawyer, an Aetna representative, denied Plaintiff's claim for failure to comply with the 90-day deadline for filing a written proof of loss claim.

On November 15, 1995, Plaintiff wrote Tawyer and requested a review of the decision denying his benefits. In this letter, Plaintiff notified Tawyer that the SPD did not mention any 90–day deadline. In response to this letter, Mary Lou Cotter, an Aetna representative, wrote Plaintiff and again denied his claim for failure to comply with the 90–day deadline. Plaintiff also received a letter from Aetna on April 30, 1998, again denying Plaintiff's claim but basing the denial on several new grounds: the Physical Demands Analysis Worksheet Metric provided to Jones,[2] review of Plaintiff's medical records by an Aetna medical representative, Plaintiff's return to work after the accident, Plaintiff's failure to file a claim within the 90–day time limit, and Plaintiff's failure to comply with the three-year contractual statute of limitations. Plaintiff brings this action pursuant to ERISA and seeks to recover long-term disability benefits he believes Defendants owe him under his disability insurance policy. Plaintiff also alleges that a penalty should be assessed against the Defendants for their failure to provide him the claim forms he requested. Defendants have filed a Motion for Summary Judgment on all of Plaintiff's claims.

## II. Requirements for Summary Judgment

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). When the *moving* party has the burden of proof at trial, that party must carry the burden at summary judgment by presenting evidence

affirmatively showing that, " on all the essential elements of its case ..., no reasonable jury could find for the non-moving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc). When the *non-moving* party has the burden of proof at trial, the moving party may carry the burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet the burden of proof at trial, *see Clark*, 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); merely *stating* that the non-moving party cannot meet the burden at trial is *not* sufficient, *Clark*, 929 F.2d at 608. Any evidence presented by the movant must be viewed in the light most favorable to the non-moving party. *Adickes*, 398 U.S. at 157, 90 S.Ct. 1598.

If—and *only* if—the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608. The non-moving party cannot carry the burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *Morris v. Ross*, 663 F.2d 1032, 1033–34 (11th Cir.1981), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the non-moving party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. A genuine issue of material fact will be said to exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. 2505.

---

**2.** Jones provided Aetna the document describing Plaintiff's job duties in order for them to assess his ability to perform his job after his accident. Plaintiff contends that this document, the Physical Demands Analysis Worksheet, incorrectly described his job responsibilities. The document allegedly concentrated on Plaintiff's managerial responsibilities without regard to the actual field work he performed.

The clerk has given the non-moving party notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and of the consequences of default; thus, the notice requirements of *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir. 1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration. The Court will proceed to review the applicable substantive law and inquire whether the moving party—and, if necessary, the non-moving party—has carried the burden as set forth above. *See Clark*, 929 F.2d at 609 n. 9.

### III. Analysis

Defendants seek summary judgment on Plaintiff's claim that he is owed benefits under his long-term disability insurance plan with Aetna. Defendants also seek summary judgment on Plaintiff's claim that he is entitled to a statutory penalty pursuant to ERISA for Defendants' failure to provide him with the proper forms necessary to file his disability claim. These contentions are analyzed separately below.

### A. Time Deadlines

Defendants contend that Plaintiff's disability claim is barred because he violated several time deadlines for filing claims under the plan. Specifically, Defendants point to a three-year contractual statute of limitations and a 90–day claims deadline with a corresponding one-year grace period described in the brochure "Your Group Plan," the detailed plan description.

Plaintiff contends that these time deadlines cannot be used to deny him benefits because they are not explained in the SPD. Plaintiff admits that he possessed a copy of the more detailed plan description containing the time deadlines, "Your Group Plan," and that the SPD suggests participants contact their company for additional information about plan specifics. Both parties agree that "Disability Benefits" is the SPD governing the plan pursuant to ERISA.

ERISA requires administrators to provide an SPD to all plan participants and beneficiaries. The SPD must be:

> written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and com-

*prehensive* to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.

29 U.S.C. § 1022(a) (emphasis added). ERISA also mandates specific information which must be included in the SPD:

> the plan's requirements respecting eligibility for participation and benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the procedures to be followed in presenting claims for benefits under the plan.

*Id.* § 1022(b).

Plaintiff contends that the booklet "Disability Benefits" is an illegal SPD. Plaintiff argues that Defendants' failure to provide information about the contractual statute of limitations and the 90–day claims filing deadline in the SPD violates ERISA. Because Defendants seek to deny Plaintiff's benefits based on these time limits, Plaintiff contends that this information should have been included in the SPD. Plaintiff further contends that the deadlines included in "Your Group Plan" conflict with the SPD which does not include any deadlines barring a beneficiary's claim.

Defendants contend that they have met ERISA's requirements by indicating in the SPD that the company would provide additional information detailing plan specifics. By providing Plaintiff with a copy of the "Your Group Plan" booklet, Defendants argue that the time limits in "Your Group Plan" bar Plaintiff's claim.

■ Accepting Defendants' contentions, however, would violate one of ERISA's main objectives in mandating that plan participants receive plan summaries.

> To require a participant to return to the complex and often confusing language of the Plans themselves, instead of the SPD, frustrates the purpose Congress intended the SPD to perform—to be an accurate and understandable summary of the plan's administration.

*Thompson v. Federal Express Corp.*, 809 F.Supp. 950, 956 (M.D.Ga.1992).

It is of no effect to publish and distribute a plan summary booklet designed to simplify

and explain a voluminous and complex document, and then proclaim that any inconsistencies will be governed by the plan. Unfairness will flow to the employee for relying on the summary booklet.

*McKnight v. Southern Life & Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir.1985). The contractual statute of limitations and the time deadline for filing written proof of loss are significant components of the plan. Failure to comply with these time deadlines may result in an insured's loss of benefits. Because the time deadlines are such an integral part of the insurance plan, failure to include them in the SPD violates ERISA's requirement for plan summaries that provide employees with the essential information regarding their plans.

■ Even though the SPD violates ERISA for failing to include the contractual statute of limitations and deadlines for filing loss claims, Plaintiff is not entitled to automatic relief from these terms. These terms are still enforceable against Plaintiff unless he demonstrates that he relied on the SPD in making decisions concerning his disability benefits. *Branch v. G. Bernd Co.*, 955 F.2d 1574, 1579 (11th Cir.1992). As the Eleventh Circuit Court of Appeals has noted:

> Of course, when an employer provides an inaccurate plan summary, the beneficiaries who rely on that summary are not accurately apprised of their rights. But when a beneficiary fails to read or rely on the summary, whether it is accurate or not, the beneficiary also prevents full appraisal of the rights under the plan. We thus hold that, to prevent an employer from enforcing the terms of a plan that are inconsistent with those of the plan summary, a beneficiary must prove reliance on the summary.

*Id.*

Plaintiff has provided an affidavit stating that he relied on the SPD in making decisions about his disability benefits. (McNutt Affidavit at ¶ 28–29). Although Plaintiff admits having a copy of the document detailing the time deadlines, ERISA entitles him to rely on the SPD. Accordingly, Plaintiff's claim is not barred by the plan deadlines.

## B. Plaintiff's Disability

Defendants contend that even if the time deadlines do not bar Plaintiff's claim, Defendants' decision denying Plaintiff's claim on the merits should· be upheld. Defendants contend that this decision should be evaluated using the arbitrary and capricious standard. Further, Defendants contend that the physicians and claims administrators evaluating Plaintiff's claim correctly concluded that he was not entitled to long-term disability benefits.

### 1. Standard of Review

Defendants contend that the decision denying Plaintiff's long-term disability benefit claim should be reviewed under an arbitrary and capricious standard. Plaintiff, on the other hand, contends that ERISA requires a *de novo* review. The Supreme Court has determined that the following standard of review is appropriate:

> we hold that a denial of benefits challenged under [29 U.S.C.A.] § 1132(a)(1)(B) is to be reviewed under the de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to continue the terms of the plan.

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). This Circuit has interpreted *Bruch* to mandate *de novo* review unless the plan *expressly* provides the administrator authority to make eligibility determinations or to construe plans terms. *Kirwan v. Marriott Corp.*, 10 F.3d 784, 788 (11th Cir.1994). In other words, the plan must contain "express language unambiguous in its design to give the Administrator discretionary authority to determine eligibility benefits or to construe the terms of the plan." *Id.* at 789.

The Eleventh Circuit Court of Appeals has determined that a decision to deny ERISA benefits was to be reviewed *de novo* in several cases where insurance plans did not expressly confer discretionary authority. In *Baker v. Big Star Division of the Grand Union Co.*, the court rejected defendant's argument that the power to make initial eligibility determinations in accordance with the terms and conditions of the plan was

inherently discretionary. 893 F.2d 288, 291 (11th Cir.1989). Instead, the court determined that express language granting discretionary authority was necessary. *Id.* In another case, where the plan provided that the "Administrator will determine whether a benefit is properly payable," but did not include a "grant of discretion to accompany this mandatory function," the Eleventh Circuit determined that a *de novo* standard of review was also appropriate. *Kirwan,* 10 F.3d at 789.

In our case, the ASC between Jones and Aetna provides that:

> Aetna in performing its obligations under this Contract is acting only as agent of the Contractholder and the rights and responsibilities of the parties shall be determined in accordance with the law of agency except as otherwise herein provided. The Contractholder hereby delegates to Aetna *authority* to make determinations on behalf of the Contractholder with respect to benefit payments under the Plan and to pay such benefits. In connection with such determinations, Aetna acknowledges that it is acting as fiduciary solely for benefit determination, benefit processing and review, and appeals of denied claims for benefits under the Federal "Employee Retirement Income Security Act of 1974" (ERISA). For the purposes of ERISA and any applicable state legislation of similar nature, the Contractholder shall, however, be deemed the administrator of the Plan.

(emphasis added). Defendants contend that the plan delegates *discretionary* authority for determining the validity of claims to Aetna under the ASC although the ASC does not specifically state that the authority is sole or discretionary. Plaintiff, however, contends that Aetna shares authority with Nelson Taylor of Jones Group who makes the initial determinations concerning the filing of a claim, eligibility for disability, and whether to give a claim form to a plan participant or beneficiary. Plaintiff also contends that the authority is not expressly discretionary and that discretionary authority cannot be implied under ERISA.

■ The cases in this Circuit make clear that *de novo* review of Aetna's decision to deny Plaintiff's long-term disability claim is appropriate in this case. Although the ASC gives Aetna authority to determine the validity of claims, the ASC does not expressly state that the authority is sole or discretionary. Further, Plaintiff contends that Aetna's authority to make claim determinations is shared with a Jones employee. Accordingly, Aetna's decision denying Plaintiff's long-term disability claim will be reviewed *de novo.*[3]

### 2. Evidence of Disability

■ In evaluating Plaintiff's qualifications for long-term disability benefits under the plan, all available evidence is evaluated in a *de novo* review. In other words, the court is not limited to the evidence that Aetna initially evaluated in making its determination as to whether Plaintiff is entitled to disability benefits. *Kirwan,* 10 F.3d at 789. The "Your Group Plan" brochure defines "total disability" as follows:

> During the first 24 months of a period of disability, you will be considered unable to work if you cannot work at the type of occupation in which you normally engage. After the first 24 months of a period of total disability, you will be considered unable to work only if you are unable to work at any reasonable occupation.

Plaintiff has provided sufficient evidence to establish that a question of fact remains as to whether Plaintiff qualifies as disabled under this definition. Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's request for long-term disability benefits pursuant to ERISA is **DENIED.**

### C. Penalty for Failure to Provide Forms

Plaintiff contends that he is entitled to recover a statutory penalty under ERISA pursuant to 29 U.S.C. § 1132(c) because Defendant Jones did not provide him with the forms necessary for him to file his disability claim. ERISA provides statutory penalties

---

3. Even if an arbitrary and capricious standard of review is used, Aetna's decision denying Plaintiff's request for long-term benefits would be given less deference because of Aetna's conflict of interest. Although Jones pays long-term disability benefits for the first five years an insured is disabled, Aetna is responsible for making the payments if the insured is disabled for more than five years.

against plan administrators who refuse to comply with requests for information that ERISA requires administrators to provide. ERISA contains a comprehensive list of documents administrators must provide. 29 U.S.C. § 1024(b)(4). Claim forms are not among the documents listed under the statute that must be provided to plan participants.

Plaintiff concedes that ERISA does not specifically require plan administrators to provide claims forms. Instead, Plaintiff argues that a penalty should be assessed for failure to furnish claims forms because these forms are such an integral part of the management and administration of the plan.

■ Because Congress has not explicitly provided a statutory penalty for a plan administrator's failure to provide a claims form, the Court declines to extend the statute to allow Plaintiff's ERISA claim for a statutory penalty to proceed.[4] *See Allinder v. Inter–City Prod. Corp.*, 152 F.3d 544, 548–50 (6th

Cir.1998) (providing detailed discussion rejecting Plaintiff's demand for statutory penalty for Defendant's refusal to supply claims forms). Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's request for a statutory penalty for Defendants' failure to provide claims forms is **GRANTED.**

## IV. Conclusion

Accordingly, Defendants' Motion for Summary Judgment (document # 30) is **DENIED** as to Plaintiff's claims regarding Defendant's failure to pay long-term disability benefits. Defendants' Motion for Summary Judgment in regard to Plaintiff's claim for a statutory penalty for Defendants' failure to provide insurance claims forms is **GRANTED.** Plaintiff's remaining claims shall proceed to trial accordingly.

---

4. Although the Court declines to assess Defendants a penalty for their failure to provide Plaintiff the claims forms he requested, Defendants'

failure to provide the forms indicates questionable behavior.