**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-13678

Non-Argument Calendar

————————————

YVETTE EGGLESTON,

*Plaintiff-Appellant,*

*versus*

UNUM LIFE INSURANCE COMPANY OF AMERICA,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-23393-DPG

————————————

Before JILL PRYOR, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Yvette Eggleston appeals the district court's judgment for Unum Life Insurance Company of America on Eggleston's claim that Unum improperly terminated her long-term disability benefits

under the Employee Retirement Income Security Act. After careful review, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Eggleston worked as a clinical research nurse at Johns Hopkins Bayview Medical Center. By virtue of her employment, she participated in a long-term disability insurance policy issued by Unum and governed by ERISA. Johns Hopkins delegated to Unum "discretionary authority to determine . . . eligibility for benefits and to interpret the terms and provisions of the policy."

Under the policy, Eggleston was entitled to benefits for twenty-four months if she was "limited from performing the material and substantial duties of [her] regular occupation due to [her] sickness or injury." After twenty-four months, she would continue receiving benefits only if she was not "able to work in any gainful occupation for which" she was "reasonably fitted by education, training, or experience on a part-time basis."

In 2011, Eggleston stopped working because of pain caused by multiple chronic illnesses[1] and submitted a claim to Unum for long-term disability. Unum approved her claim, concluding that she could not perform her regular occupation as a clinical research nurse based on her medical providers' reports that Eggleston was unable to stand or walk for prolonged periods of time.

---

[1] She developed, and her doctors diagnosed her with, different chronic conditions at different times, including sciatica in 2011, fibromyalgia in 2013, and undifferentiated connective tissue disease in 2015.

After twenty-four months passed, Eggleston requested that Unum continue her benefits, claiming she was disabled from performing duties of any gainful occupation. Reviewing her medical records, Unum approved Eggleston's request because she had elevated inflammatory markers and complained "of increasing joint stiffness throughout much of the day particularly in her hands, wrists, ankles and feet." So Unum agreed "it [wa]s reasonable that [she] would be unable to sustain reliable work capacity at this time." But Unum explained that, "with medical treatment, [her] condition may improve" and it was "anticipated that [she] may regain the ability to increase [her] functional capacity in the future."

Indeed, Eggleston's conditions seemed to stabilize and improve over time. In 2014, Unum noted in its review that "lumbar imaging did not find significant disease," Eggleston "can sit for brief periods but . . . the sustainability . . . is problematic[,]" and "[g]iven the duration of symptoms, prognosis is guarded." In 2015, it concluded that Eggleston "had some improvement of inflammatory markers on current medications and reports some improvement in function" but she continued "to have various pain complaints and inflammatory markers do remain elevated . . . [so] it [wa]s medically reasonable that [she] would be unable to sustain even primarily seated activities on a full time basis due to pain complaints."

After 2015, Unum started conducting less frequent reviews but continued to provide Eggleston with disability benefits while monitoring her work capacity through reviews of her routine examinations and treatment. Unum consistently found that she was

unable to work, mainly because her medical providers asserted she was unable to sit or stand for more than five to fifteen minutes at a time due to self-reported joint pain.  Unum's medical reviews continued to note, however, that Eggleston had "potential for further improvement/stabilization of symptoms."

Then, in 2021, Unum discovered several posts on Eggleston's social media that revealed her operating a soul food catering business, traveling to St. Thomas in the United States Virgin Islands, attending a three-hour performance of a show, and attending a wedding.  Because Eggleston "appear[ed] active with travel," was able to "cook[] and cater[]," and could sit or stand for multiple hours for entertainment purposes, Unum began to investigate her medical file.

The investigation involved multiple status calls to Eggleston and her medical providers.  Eggleston reported that she had fallen due to a flareup in pain but recently started to feel better.  Eggleston's medical providers maintained that she was unable to work because of pain, but they admitted improvements in her conditions.  Blood tests for arthritis were negative, ultrasounds and x-rays for joint swelling were "unremarkable," and there were no signs of acute injury or distress.

In 2022, Unum had multiple experts review Eggleston's medical files, all of whom found that Eggleston's chronic conditions were "generally stable and controlled with flares described as mild to moderate and intermittent," her "inflammatory markers were within normal limits," there was "no evidence of medication

changes or documentation of severe, uncontrolled pain complaints," no red, swollen, or hot joints, and no findings of significant joint erosion and no hand or finger dysfunction. Further, Unum's vocational consultant opined that Eggleston could now perform sedentary work, which included the following "gainful" occupations: triage nurse, utilization review coordinator, and medical claims review nurse.

Based on its medical and vocational experts' opinions, Unum notified Eggleston that it determined she was no longer disabled and would stop providing her benefits. After Unum made its decision, Eggleston reported increased pain to her medical providers and started going to physical therapy for the first time in over a year. During one of these medical appointments, it was revealed that she had stopped taking her medication "at various times for various reasons" and her medication levels were "undetectable." Eggleston appealed Unum's benefits decision, but Unum denied the appeal.

Eggleston then turned to the district court. She sought the district court's review of Unum's decision under ERISA, which was done through cross motions for summary judgment. After outlining Eggleston's medical providers' reports from 2011 to 2020 and Unum's investigation and its medical experts' opinions, the district court affirmed Unum's decision as plan administrator. It noted that "the impetus of Unum's harder look at" Eggleston's claim was her social media posts, which showed activities of someone with some functional capacity. Further, it stated that Eggleston's medical

providers' opinions "were based on [her] self-reported symptoms and pain levels, physical examinations, and imaging over the course of many years." But Unum's medical experts reviewed Eggleston's medical records and found it "did not support her providers' claims that she was incapable of any work." The district court concluded that "Unum's extensive review, [which] found that [Eggleston's] conditions had stabilized and were managed by medication," was not unreasonable and was supported by evidence in the record.

Eggleston appeals the judgment for Unum.

## STANDARD OF REVIEW

"We review de novo a district court's ruling affirming or reversing a plan administrator's ERISA benefits decision, applying the same legal standards that governed the district court's decision." *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011).

## DISCUSSION

Eggleston argues that the district court "did not make actual findings that Unum's opinions were reasonable as required" under ERISA. We disagree.

Under section 1132 of ERISA, a plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

There's a six-step framework for reviewing actions challenging adverse benefit determinations under ERISA. *Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan*, 833 F.3d 1299, 1311 (11th Cir. 2016).

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

> (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

> (5) If there is no conflict, then end the inquiry and affirm the decision.

> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when

determining whether an administrator's decision was arbitrary and capricious.

*Id.* at 1311–12 (citing *Blankenship*, 644 F.3d at 1355).

Like the district court, we assume (without deciding) that Unum's decision was de novo wrong at step one. At step two, the district court correctly found that Unum was vested with discretionary authority because "the plan expressly provide[d]" Unum "discretionary authority to make eligibility determinations or to construe the plan's terms." *See Kirwan v. Marriott Corp.*, 10 F.3d 784, 788 (11th Cir. 1994); *see also Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("[A] denial of benefits challenged under [section] 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefits plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."). Specifically, the plan stated that, "[w]hen making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." *See Kirwan*, 10 F.3d at 788; *Firestone Tire and Rubber Co.*, 489 U.S. at 115.

That brings us to step three—"whether 'reasonable' grounds supported" Unum's decision. *Alexandra H.*, 833 F.3d at 1311 (citing *Blankenship*, 644 F.3d at 1355). Step three is analyzed under the "arbitrary and capricious" standard. *Id.* (citing *Blankenship*, 644 F.3d at 1355). That means that the benefits determination must not be disturbed if it was reasonable and "supported by substantial evidence." *Swaters v. Osmus*, 568 F.3d 1315, 1322 (11th Cir. 2009).

Substantial evidence, in turn, means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"—that is, "something more than a scintilla of evidence, but something less than the weight of the evidence." *Id.* In short, we must "determine whether there was a reasonable basis for the decision, based upon the facts as known" to Unum "at the time the decision was made." *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008). The relevant evidence is limited to the record before the administrator. *Alexandra H.*, 833 F.3d at 1312.

In determining whether a plan administrator's decision was reasonable, we have said that plan administrators "may give different weight" to competing medical opinions "without acting arbitrarily and capriciously" and they "need not accord extra respect to the opinions of a claimant's treating physicians." *Blankenship*, 644 F.3d at 1356; *see also Swaters*, 568 F.3d at 1322 ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

Eggleston argues that the district court did not make any findings to support the conclusion that Unum's competing opinions were reasonable. We are not persuaded. The district court considered the evidence in the record and correctly found that Unum's decision was not arbitrary and capricious. As it explained, the record "show[ed] competing opinions as to whether [Eggleston] was disabled . . . when Unum terminated her benefits."

On the one hand, Eggleston's medical providers asserted she was unable to work—reaching their opinions based on her "self-reported symptoms and pain levels," physical examinations, imaging, and bloodwork that showed as "unremarkable" during the relevant time period. On the other hand, Unum's medical experts opined that Eggleston's medical records "did not support her providers' claims that she was incapable of work" and "the suggested limitations on [her] work were overly restrictive." Further, as the district court explained, Eggleston's social media "activity . . . indicated improved functional capacity, and there [had] not been any updated medical records that include physical examinations, or updated diagnostics, including inflammatory markers" to show a current completely-disabled functional capacity.

Unum's multiple medical expert opinions, Eggleston's social media activity, and Eggleston's medical records were enough to find that Unum's decision was not arbitrary and capricious. As the district court put it, Unum "appear[ed] to have considered most, if not all, of the[] opinions and supporting evidence" but its "reviewers simply reached a different conclusion as to what findings the record supports." And these findings, "while different from what [Eggleston's] providers . . . might opine, [were] not unreasonable and [were] supported by evidence in the record." *See id.* ("Given these possibly conflicting reports and the absence of persuasive evidence that MetLife conducted an unfair review of Blankenship's claims, we cannot conclude that MetLife was unreasonable in crediting the medical advice of the independent doctors over the

24-13678                  Opinion of the Court                      11

opinions of Blankenship's doctors and in concluding that Blankenship failed to provide 'conclusive medical evidence of disability.'").

"Given the deference owed . . . to the discretionary benefits decisions of plan administrators, we cannot conclude on this record" that Unum's benefits decisions were unreasonable. *See id.* at 1357. Because we find that Unum's decision was not arbitrary and capricious, we affirm.[2]

**AFFIRMED.**

---

[2] Normally, there are two more steps we would take under the six-step framework. Where the administrator's decision is not arbitrary and capricious, we "then determine if he operated under a conflict of interest." *Alexander H.*, 833 F.3d at 1312. "If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious." *Id.* The district court found that there was a structural conflict of interest but "there [was] nothing in the record to reflect that the conflict influenced Unum's decision," so Eggleston had "not met her burden to show that Unum's decision was arbitrary and capricious." [**DE 51 at 19**] Because Eggleston does not challenge the district court's findings as to Unum's conflict of interest, we do not address that issue in detail. This case rises and falls on the third step, and, as we explain, it falls for Eggleston because Unum's decision was not arbitrary and capricious.