Nancy H. MARECEK, Plaintiff–Appellee,

v.

BELLSOUTH SERVICES, INC., a corporation, BellSouth Services Sickness and Accident Disability Plan, BellSouth Services, Inc., as Administrator for BellSouth Services Sickness and Accident Disability Plan, BellSouth Services Employee Assistance Program, BellSouth Services, Inc., as Administrator for BellSouth Services Employee Assistance Program, Defendants–Appellants.

No. 93–6170.

United States Court of Appeals, Eleventh Circuit.

April 10, 1995.

David P. Whiteside, Jr., William K. Hancock, Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, AL, for appellants.

Fob James, III, Birmingham, AL, James Allen Main, Beasley, Wilson, Allen, Main & Crow, P.C., Montgomery, AL, Richard J. Stockham, III, Stockham & Miles, Birmingham, AL, for appellee.

Before BIRCH and CARNES, Circuit Judges, and MORENO [*], District Judge.

MORENO, District Judge:

BellSouth Telecommunications, Inc., ("BellSouth") appeals the district court's ruling that BellSouth violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, when it arbitrarily and capriciously denied appellee's claim and reviewed the class members' claims. The district court awarded the appellee, Nancy H. Marecek, benefits and required the claims of the class be evaluated by BellSouth. We affirm the district court's rulings that Marecek was totally disabled and entitled to disability benefits, as well as its certification of the class.

## BACKGROUND

In 1988, Marecek was a BellSouth employee and was covered by BellSouth's Services Sickness and Accident Disability Benefit Plan ("Plan"). The plan provides that a participant is qualified to receive sickness disability benefits "on account of physical disability to work by reason of sickness." The plan also offers accident disability benefits that contain two benefit classifications—one for total accident disability and one for partial accident disability. The sickness disability benefits term does not specify whether the sickness disability benefits are for partial disability or total disability.

Marecek became addicted to the painkiller Fiorinal following a sinus operation and a hysterectomy in 1987. In May 1988, Marecek's treating physician diagnosed her as having a "major depressive disorder." BellSouth's consulting psychiatrist examined her and found that she was too depressed to perform her job adequately. Marecek took sick leave on May 26, 1988, and began receiving sickness disability benefits on June 2, 1988.

BellSouth authorized sickness disability benefits to continue until July 31, 1988. Marecek was to return to work on August 1, 1988. However, Marecek only worked for two hours on August 1, 1988, and cried the entire time. Marecek told BellSouth that she was not ready to return to work and that she wanted to know her options. According to BellSouth's records, she was informed that she would need to submit medical evidence from her physician for continued disability benefits.

On August 12, 1988, BellSouth received a physician certificate from Dr. Clarence McDanal, Marecek's physician. The certificate indicated that Marecek was suffering from adjustment disorder with mixed emotional features and from the side effects of Xanax medication. It also set the "estimated date" of Marecek's return to be "approximately September 19, 1988." BellSouth reinstated Marecek's sickness disability benefits until September 19, 1988 and ordered Marecek to return to work on September 19, 1988.

On September 16, 1988, Dr. McDanal recommended in a physician certificate that Marecek only work for "one-half time for at

[*] Honorable Federico A. Moreno, U.S. District Judge for the Southern District of Florida, sitting by designation.

least a month" and warned of the "side effects to medication." Marecek did not feel able to return to work on September 19, 1988, and requested use of her vacation days. BellSouth denied the request. Marecek's benefits ended on September 19, 1988 and she returned to work that day.

During her first day, Marecek was confused, angry, and unable to do her work. Marecek returned the next day, but resigned, stating "I cannot perform my duties in this job." Marecek's husband drove her home because she was unable to operate a car.

Marecek filed a disability claim with BellSouth on November 9, 1988. In January, Marecek entered an in-resident treatment program for her Fiorinal dependency. Dr. Jack White, who treated Marecek, advised BellSouth of Marecek's condition in a February 2, 1989 letter:

> [Marecek] has been averaging 8–10 Fiorinal and Fioricet tablets per day since [her surgeries in 1987] ... In effect at the time the lady resigned her job in September of 1988, she was taking 4mg. of Xanax daily, 100 mg. Norpramin at bedtime, and 8–10 Fiorinal or Fioricet tablets daily. It is no wonder to me that she had difficulty concentrating and performing her job. She certainly was drug effected and in my opinion probably not able to make very rational decisions. With the information available to them at the time, I certainly understand why the physicians caring for Ms. Marecek made their decisions and agreed with her decision to resign. I do not believe they would have done so knowing that she was taking the Fiorinal and Fioricet in addition to the other medications mentioned.

BellSouth acknowledged that it considered Dr. White's letter, as well as Dr. McDanal's March 29, 1989 letter indicating that medication "greatly influenced" Marecek's problems.

Dr. Wood Herren, who was BellSouth's Medical Director and who evaluated medical evidence in benefits cases to recommend action on a claim, was present during BellSouth's review of Marecek's case. Mr. F.W. Brice, the head of the department in which

Marecek worked, was also present. On August 10, 1988, Dr. Herren called Brice. According to Dr. Herren's notes in Marecek's claim file, Brice, who had not seen Marecek since May 26, 1988, said "... the whole employee body is in support of ... suspension of benefits." Dr. Herren wrote in his notes that Brice's comments were "supportive of the medical-benefits decision to suspend benefits" because "the people in the workplace agreed that this employee (Marecek) was not sick." Dr. Herren stated that he believed that it was "hard to separate medical evidence from other things such as job performance, and absenteeism, and a whole bunch of other things which aren't really part of the medical records." Based at least in part on his conversation with Brice, Dr. Herren believed that Marecek was able to make rationale decisions in mid-September 1988.

However, Dr. Herren also noted that Marecek's consulting psychiatrist suggested to him that Marecek "has only been through 'detox' and is no way ready to return to work and will need one-two years for recovery." After Dr. Herren received the diagnosis of Dr. White, Dr. Herren stated that "this lady will not be a satisfactory employee if reinstated. However, if top management wishes to take the risk it should be with full disclosure of this file."

During the review of Marecek's claim, BellSouth found that "[a]lthough Ms. Marecek was treated for other conditions after her resignation, these conditions were not disabling at the time of her resignation and therefore, do not qualify for sickness disability benefits under the Sickness and Accident Disability Benefit Plan." BellSouth finally denied Marecek's claim on May 4, 1989.

## ANALYSIS

BellSouth presents two challenges to the district court's judgment. BellSouth contends that it correctly denied benefits to Marecek. BellSouth also alleges that the district court improperly certified a class action.

*Standard of Review for Plan Interpretations*

■ ERISA does not provide the standard to review decisions of a plan administrator or fiduciary.[1] *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989). Instead, the United States Supreme Court in *Firestone* established a spectrum of standards:

> a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.... Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a "facto[r] in determining whether there is an abuse of discretion." Restatement (Second) of Trusts § 187, Comment d (1959).

> *Firestone,* 489 U.S. at 115, 109 S.Ct. at 957.

■ We apply the *Firestone* range of standards to interpretations of ambiguous plan provisions. *Brown v. Blue Cross & Blue Shield,* 898 F.2d 1556–68 (11th Cir. 1990); *Newell v. Prudential Ins. Co. of Am.,* 904 F.2d 644, 650 (11th Cir.1990). Acknowledging the standards of review set forth in *Firestone,* this Court in *Brown* crafted an additional, more stringent standard of review for circumstances where the decisionmaker suffers a conflict of interest. *Brown,* 898 F.2d at 1566; *Newell,* 904 F.2d at 651. Therefore, we have three standards of review for plan interpretations: (1) *de novo,* applicable where the plan administrator is not afforded discretion; (2) arbitrary and capricious where the plan administrator possesses discretion; and (3) heightened arbitrary and capricious where there is a conflict of interest.

*BellSouth's Interpretation of the Plan*

■ BellSouth argues on appeal that this case involves both a plan interpretation and a factual finding. Having briefly addressed the standards of review for plan interpretations, we first decide whether BellSouth correctly interpreted the plan. Primarily, the parties dispute on appeal the meaning of "disability" for sickness disability benefits. BellSouth argues that the plan requires "total disability" for sickness disability benefits.

The plan does not specify whether the claimant must be totally disabled and unable to work or whether the benefits accrue for a claimant that is partially disabled and can work part time. In contrast, the plan does provide for both total and partial accident disability benefits. BellSouth alleges that the plan requires total sickness disability, Marecek could work part time with her sickness disability, Marecek was not totally disabled from her sickness, and Marecek has no right to sickness disability. Hence, we must interpret whether BellSouth correctly interpreted "disability" to require total disability for sickness disability benefits.

We note that the "Summary of the Sickness and Accident Disability Benefit Plan" provides that sickness disability benefits begin on the eighth calendar day of absence from work. Notably, benefits do not begin on the eighth calendar day of part-time work that results from sickness. Further, a claimant may receive full pay for sickness disability benefits. If sickness disability benefits accrued for partially disabled employees, then a part-time, disabled worker could receive a windfall.

We conclude that the plan requires total disability for sickness disability benefits. We need not decide which standard of review would apply in the instant case, as our conclusion would be the same under either of the three standards of review set forth in *Newell.* Accordingly, it is not necessary for us to

---

1. In addressing the standard of review, we will only discuss the review of a plan administrator's decision rather than refer to the standard of review for both a plan administrator and a fiduciary. The distinction between a plan administrator and a fiduciary is unimportant because the standard of review, as set forth by the Court in

*Firestone,* "applies equally to the decision of fiduciaries and the plan administrator." *Brown v. Blue Cross and Blue Shield of Alabama, Inc.,* 898 F.2d 1556, 1560 (11th Cir.1990), *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991).

address whether the plan administrator had discretion to interpret the plan terms and whether there was a conflict of interest.

*Standard of Review for a Plan Administrator's Factual Findings*

█ Having concluded that BellSouth correctly interpreted the plan, we now decide whether BellSouth erroneously concluded that Marecek was not totally disabled.

The Eleventh Circuit has not explicitly addressed the standard for reviewing the factual rulings of a plan administrator. *Maushardt v. Harris Corp.*, 855 F.Supp. 1240, 1243 (M.D.Fla.1994). The other circuits disagree on the appropriate standard of review of an administrator's factual decision. *Pierre v. Connecticut Gen. Life Ins. Co.*, 932 F.2d 1552 (5th Cir.), *cert. denied*, 502 U.S. 973, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991) (White, J., dissenting from denial of certiorari) (recognizing that "a disagreement has developed in the Courts of Appeals concerning the standard of review to be applied when a benefits decision turns on the facts of the case, rather than the interpretation of the terms in the ERISA plan").

The Third and Fourth Circuit Courts of Appeal explicitly adopted the *Firestone* analysis to review findings of fact. *Luby v. Teamsters Health, Welfare and Pension Trust Funds*, 944 F.2d 1176 (3rd Cir.1991); *Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210, 1213–14 (4th Cir.1990). In the First and Ninth Circuits, district courts have also used the *Firestone* standard to review both plan interpretations and factual findings. *Jorstad v. Connecticut Gen. Life Ins. Co.*, 844 F.Supp. 46, 54 (D.Mass.1994); *Peters v. Life Ins. Co. of N. Am.*, 816 F.Supp. 615, 617 (N.D.Cal.1993); *James v. Equicor, Inc.*, 791 F.Supp. 804, 807 (N.D.Calif.1992). The Sixth Circuit has not explicitly decided the issue. *Luby* 944 F.2d at 1182 n. 4 (interpreting the Sixth Circuit in *Brown v. Ampco–Pittsburgh Corp.*, 876 F.2d 546, 551 (6th Cir.1989), as applying a *de novo* standard to plan administrator's factual determinations without addressing whether *Firestone* applies exclusively to plan interpretation). However, a district court in the Sixth Circuit applied the *Firestone* standard for the review of factual findings. *Donaldson v. Metro. Life Ins. Co.*, 812 F.Supp. 103, 105 n. 5 (E.D.Mich. 1993). In addition, a district court in the Tenth Circuit used the *Firestone* approach. *Leahy v. The Bon, Inc.*, 801 F.Supp. 529, 538–39 (D.Utah 1992). *But see Torre v. Federated Mut. Ins. Co.*, 854 F.Supp. 790, 815–16 (D.Kan.1994) (recognizing that the Tenth Circuit has not resolved the standard of review).

*BellSouth's Factual Findings*

The district court set out the facts that support Marecek's right to sickness disability benefits and found that "plaintiff Marecek's claim was arbitrary and capriciously denied by the Plan's fiduciaries, and the claims of the plaintiff ... were not subjected to a full and fair review by the Plan's fiduciaries."

To support the denial of benefits, BellSouth argues that Marecek failed to present any written evidence that she was totally disabled. However, Marecek did provide letters that detailed her total disability; Marecek offered medical opinions that she was drug affected and could not make "rational decisions" on September 19, 1988.

BellSouth next argues that the existing medical evidence demonstrated that Marecek was not totally disabled. Dr. McDanal recommended that Marecek's return on September 19, 1988 be with "limited duty." Limited duty might be partial disability but it is not total disability, according to BellSouth. While Dr. McDanal recommended limited duty, we hold that his prediction does not conclusively establish whether Marecek was totally disabled on September 19, 1988, especially because he warned of "side effects to medication."

If BellSouth relied on Dr. Herren's conversation with Brice, then we find that the employees' opinion that Marecek was not ill is insufficient to rebut the medical opinions. Finally, in the appellate oral argument, BellSouth focused on Marecek's attendance on September 19 and 20, 1988 as evidence that she could work. However, Marecek "gave it a go" and her attempt to work does not forever bar her collection of sickness disability benefits. Therefore, BellSouth's factual findings and *post hoc* explanations are without merit. We find Marecek was totally

disabled and is entitled to sickness disability benefits.

We decline to decide which standard of review should be applied for factual findings by a plan administrator as BellSouth's decision does not survive the most deferential standard of review. In other words, regardless of which standard of review would apply, we find that BellSouth incorrectly determined that Marecek was not totally disabled. Accordingly, we affirm the district court's finding that Marecek is entitled to total disability sickness benefits.

*Class Certification*

Finally, BellSouth challenged the district court's certification of a class because the potential class was not "so numerous that joinder of all members is impracticable," Fed.R.Civ.P. 23(a)(1), and because Marecek is not a typical class member, Fed.R.Civ.P. 23(a)(3). According to BellSouth, Marecek is not a member of the class because she is not entitled to benefits. We find sufficient evidence in support of the district court's finding that the numerosity requirement of Rule 23(a)(1) of the Federal Rules of Civil Procedure has been satisfied. In addition, we affirm the district court's finding that Marecek qualified for total sickness disability benefits. Therefore, we dismiss BellSouth's typicality challenge to the class.

Judgment AFFIRMED.