Julie BOYER, Plaintiff,

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

No. CV294–147.

United States District Court,
S.D. Georgia,
Brunswick Division.

May 31, 1995.

Robert C. Harper, Brunswick, GA, William Phillips Tinkler, Jr., Deana Lynn Simon, Decatur, GA, for plaintiff.

Charles Gowen Spalding, Brunswick, GA, for defendant.

## ORDER

ALAIMO, District Judge.

Plaintiff, Julie Boyer, filed this Employee Retirement Income Security Act ("ERISA") action against Defendant, Metropolitan Life Insurance Company ("MetLife"), alleging that MetLife's calculation of the reasonable and customary charge for her surgery was arbitrary and capricious. Boyer seeks to recover unpaid benefits, prejudgment interest, and attorney's fees.

Before the Court is MetLife's Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure. As discussed below, Defendant's motion will be **DENIED**.

### FACTS

At all times relevant to this action, Ronald Eugene Boyer was an employee of the Alltel Corporation and a participant in Alltel's Health and Dental Care Plan (the "Plan"). The Plan is a self-funded welfare benefit plan which provides medical and dental benefits to Plan participants. Ronald Boyer's daughter, Julie Boyer, the Plaintiff in this action, is an eligible dependent under the Plan. The parties agree that the Plan is governed by ERISA, 29 U.S.C. § 1001 *et seq.*

On June 30, 1993, Julie Boyer visited the Plastic and Reconstructive Surgery Associates, P.C., in Brunswick, Georgia, for complaints of back, neck and shoulder pain caused by the size and weight of her breasts. On July 15, 1993, Dr. Jimmy Dixon performed a bilateral breast reduction on Julie Boyer at the Southeast Georgia Regional Medical Center. Dr. Dixon charged $30.00 for the office visit and $7,308.00 for the surgery.

MetLife is the claims administrator for the Plan. Pursuant to the Plan, MetLife pays 80% of the "reasonable and customary" charge for medical services. In this case, MetLife determined that the reasonable and customary charge for a bilateral breast reduction performed in Brunswick, Georgia, is $5,304.69.

To determine the reasonable and customary charge for a procedure, MetLife uses different methods, depending on the availability of certain data:

### Method I:

Under one method, MetLife considers its own data with respect to actual prior charges for a particular procedure in the relevant geographic area. The reasonable and customary charge is then set at 90th percentile of these charges. To use this method, however, MetLife must have at least twenty-five charges for a procedure. In this case, MetLife only had one prior charge of $3,130.00.

### Method II:

Under a second method, MetLife will supplement its own data with data from the Health Insurance Association of America ("HIAA"). The HIAA collects and pools surgical charge data from a number of health insurers, including MetLife. The pooled data is published without identifying each carrier's contribution. If MetLife does not have enough of its own data, it will use the HIAA data as the reasonable and customary charge if there are at least 50 charges. In

this case, the HIAA only had records of fourteen prior charges for the same procedure as Boyer's. The 90th percentile of these charges was $5,340.00.

### Method III:

When twenty-five MetLife charges or 50 HIAA charges are not available, MetLife uses yet another method to calculate the reasonable and customary charge. Under this method, the reasonable and customary charge is calculated by multiplying an "area value" by a "procedure unit value." Area values are based upon the 90th percentile of all charges for all procedures occurring within in a geographical area. The area value for Brunswick, Georgia is $26.80.

Procedure unit values are assigned depending on the complexity of the procedure and the level of specialized knowledge and training required to perform the procedure. Procedure unit values do not vary geographically. The procedure unit value for reduction mammoplasty is 90. According to Met-Life's national data, this value was assigned based upon 1231 charges. Of these charges, the average was $3,170.00, and the 90th percentile was $5,000.00.

According to MetLife guidelines, procedure unit values may be adjusted to assure they are "sufficient to cover the charges actually received across the country." (Pl.'s Resp. Br. Ex. A at 14) In this case, MetLife did not adjust the procedure unit value.

Based upon an area value of $26.80 and a procedure unit value of 90, MetLife calculated the reasonable and customary charge for Boyer's bilateral breast reduction as follows:

| | | |
|---|---|---|
| "Procedure Unit Value" for reduction mammoplasty: | | 90 |
| "Area Value" for Brunswick, Georgia: | + | $ 26.80 |
| Total: | | $2,412.00 |
| rounded up | | $2,425.00 |
| Additional factor for bilateral procedure: | + | 175% |
| | | $4,243.75 |
| Additional 25% for assistant surgeon: | + | $1,060.94 |
| **Reasonable and Customary Charge:** | . | $5,304.69 |

Boyer contends that the above calculation is arbitrary and capricious because MetLife did not properly adjust the "procedure unit value."

## DISCUSSION

### I. Summary Judgment

MetLife has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1532 (11th Cir.1994). After the movant meets this burden, "the non-moving party must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (11th Cir.1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)); *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Griesel v. Hamlin*, 963 F.2d 338, 341 (11th Cir.1992).

## II. *Standard of Review Under ERISA*

■ The Eleventh Circuit recently summarized the three standards of review for ERISA cases: (1) *de novo,* applicable where the plan administrator is not afforded discretion; (2) arbitrary and capricious, where the plan administrator possesses discretion; and (3) heightened arbitrary and capricious, where there is a conflict of interest. *Marecek v. BellSouth Services, Inc.,* 49 F.3d 702, 705 (11th Cir.1995) (relying upon *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989) and *Brown v. Blue Cross & Blue Shield,* 898 F.2d 1556, 1566 (11th Cir.1990)).

Here, the parties agree that the arbitrary and capricious standard of review applies.[1] Under this standard, "the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Dyce v. Salaried Employees' Pension Plan,* 15 F.3d 163, 166 (11th Cir.1994) (quoting *Jett v. Blue Cross & Blue Shield of Alabama,* 890 F.2d 1137, 1139 (11th Cir.1989)).

## III. *Application of the Standard*

■ Boyer contends that MetLife's calculation of the reasonable and customary charge for her surgery was arbitrary and capricious. Boyer argues that MetLife failed to adjust the "procedure unit value" to assure it was sufficient to cover the charges actually received across the country. As a result, MetLife's decision to set the reasonable and customary charge for a bilateral breast reduction at $5,304.69 was arbitrary and capricious when compared to other charges of which MetLife had knowledge.

■ The Court is unable to determine whether the various charges known to MetLife represent the cost of unilateral procedures or bilateral procedures. For the purposes of a motion for summary judgment, however, the Court construes reasonable inferences in favor of the non-movant. Fed. R.Civ.P. 56. Accordingly, the Court will assume that the charges reflected in MetLife's data represent charges for unilateral procedures. The following chart summarizes the data known to MetLife when it adjusted Boyer's claim:

| Method | Data | 175% for bilateral procedure | Reasonable and Customary Charge |
|---|---|---|---|
| Method I: MetLife Data | 1 charge = $3800 | $3800 × 175% | $6650.00 |
| Method II: HIAA Data | 14 charges 90th percentile = $5340 | $5340 × 175% | $9345.00 |
| National Data: | 1231 charges 90th percentile = $5000 | $5000 × 175% | $8750.00 |
| Method III: Procedure Unit Value × Area Value | 90 × 26.80 + 25% for assistant | $2425 × 175% + $1060.94 | $5304.69 |
| Dr. Dixon: | | | $7308.00 |

---

[1] In her brief, Boyer states that she "does not dispute [MetLife's] contention that the standard of review by this Court is whether the determination by [MetLife] of the reasonable and customary charge for the medical procedure undergone by Plaintiff in this case was arbitrary and capricious." (Pl.'s Resp. Br. at 1)

According to the above data, MetLife's reasonable and customary charge of $5304.69 is somewhat lower than all actual charges of which MetLife had knowledge. Boyer argues that under MetLife's procedures, MetLife should have adjusted the "procedure unit value" to assure it was "sufficient to cover the charges actually received across the country." (Pl.'s Resp. Br. Ex. A at 14) According to Boyer, MetLife's decision not to adjust the procedure unit value in this case was arbitrary and capricious, especially where the given procedure unit value yields a reasonable and customary charge which is substantially lower than all other charges known to MetLife. Boyer further argues that MetLife has failed to explain why it did not adjust the procedure unit value to assure that its calculations reflect national data. According to Boyer, when an insurance company collects and maintains data for the specific purpose of calculating a reasonable and customary charge, and then ignores that data, it is acting arbitrarily.

Indeed, MetLife has not articulated a "reasonable basis" for its decision not to adjust the procedure unit value in this case where such an adjustment would have assured that the procedure unit value reflected national data. *Dyce*, 15 F.3d at 166. Accordingly, the Court finds that a genuine issue of material fact exists as to whether MetLife's decision was arbitrary and capricious. Summary judgment is therefore inappropriate.

### IV. *Interest Under O.C.G.A. § 33–30–6*

■ Boyer seeks to recover prejudgment interest on unpaid benefits under O.C.G.A. § 33–30–6. MetLife contends that Boyer's state law claim for prejudgment interest is preempted by ERISA.

As the Eleventh Circuit recently noted, "the award of an amount of prejudgment interest in an ERISA case is a matter committed to the sound discretion of the trial court." *Smith v. American International Life Assur. Co. of N.Y.*, 50 F.3d 956, 958 (11th Cir.1995) (citing *Nightingale v. Blue Cross/Blue Shield of Alabama*, 41 F.3d 1476, 1484 (11th Cir.1995)). In *Nightingale*, the Eleventh Circuit affirmed the district court's use of a prejudgment interest rate from an Alabama statute analogous to O.C.G.A. § 33–30–6. *Nightingale*, 41 F.3d at 1484. In doing so, the court rejected defendant's argument that plaintiff's claim for prejudgment interest was preempted by ERISA. Accordingly, the Court holds that Boyer's claim for prejudgment interest is not preempted by ERISA.

### V. *Attorney's Fees & Costs Under 29 U.S.C. § 1132(g)*

■ MetLife argues that Boyer is not entitled to attorney's fees under O.C.G.A. § 13–6–11. Boyer contends that she is claiming attorney's fees under ERISA, 29 U.S.C. § 1132(g), not under O.C.G.A. § 13–6–11.

■ In assessing Boyer's claim for attorney's fees under 29 U.S.C. § 1132(g), the Court considers several factors: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorney's fees; (3) whether an award of attorney's fees would deter other persons acting under similar circumstances; (4) whether the party requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Nightingale*, 41 F.3d at 1485 (citing *Freeman v. Continental Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993)). MetLife has not addressed these factors. Accordingly, MetLife is not entitled to summary judgment with respect to attorney's fees.

### *CONCLUSION*

For the reasons stated above, MetLife's Motion for Summary Judgment is **DENIED.**

**SO ORDERED.**