PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 1 2000
THOMAS K. KAHN
CLERK

_____

No. 99-13581

_____

D. C. Docket No. 98-00758-CIV-J-21C

THOMAS H. YOCHUM,

Plaintiff-Appellant,

versus

BARNETT BANKS, INC. SEVERANCE PAY PLAN, EMPLOYEE BENEFITS
COMMITTEE OF THE BARNETT BANKS, INC. SEVERANCE PAY PLAN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(December 1, 2000)**

Before EDMONDSON and BIRCH, Circuit Judges, and BLACKBURN[*], District
Judge.

_____

[*]Honorable Sharon Lovelace Blackburn, U.S. District Judge for the Northern District of
Alabama, sitting by designation.

PER CURIAM:

On this appeal we decide whether, after NationsBank bought Barnett Bank, NationsBank's oral job offer to an executive of Barnett Bank that gave the executive more responsibility, but only guaranteed his salary for one year and eliminated his stock options, constitutes comparable employment under the meaning of an ERISA severance pay plan. The district court held that the new offer was comparable, and that by refusing the offer, the bank executive disqualified himself from receiving severance benefits. We REVERSE and REMAND to the district court with instructions to enter summary judgment for the Plaintiff.

## I. BACKGROUND

Plaintiff-Appellant, Thomas Yochum, had worked at Barnett Bank for 27 years when the bank was sold to NationsBank.[1] NationsBank offered Yochum the position of Regional President of Operations in central Florida, which would have increased the number of counties he supervised. However, he was only guaranteed his salary for one year, and was not offered stock options.[2] Yochum rejected this

_____

[1]We summarize only the facts relevant to our decision.

[2]Yochum also argues that the offer was not sufficient under the Severance Pay Plan because it was made orally, and not in writing as required by the Plan. We decline to decide this issue, as we find for the Plaintiff on other grounds. However, we agree with Yochum that the offer should have been made in writing in order to disqualify him from the Plan. We reject the

2

position and began working for SunTrust Bank after the Barnett Bank/ NationsBank merger became effective on 9 January 1998.

Yochum was covered under the Barnett Banks Inc. Severance Pay Plan ("Plan"), which is a welfare benefit plan as defined in the Employee Retirement Income Security Act of 1974 ("ERISA"). See 29 U.S.C. §1002. On 4 May 1998, Yochum requested that the Employee Benefits Committee ("Committee"[3]) pay him the severance benefits due to him under the Plan. On 30 July 1998, he received a letter from the Committee denying his request for severance benefits because, according to the Committee, he had rejected a written offer of comparable employment, which is a disqualifying event under section 2.2 of the Plan.[4] This letter also informed Yochum that he had exhausted his administrative remedies, and would have to "seek other legal remedies" if he planned to appeal.

On 6 August 1998, Yochum filed a complaint against the Plan and its named administrator, the Committee. Yochum then moved for summary judgment, and

---

district court's finding that the Summary of the Plan--which does not require the offer to be in writing--governs, because only the full Plan was before the Committee. R2-52-17.

[3]All responsibility for the duties of the Barnett Bank Employee Benefit Committee was legally transferred to the NationsBank Benefits Appeals Committee. See R3-84-3. Therefore, the term "Committee" will be used to refer to both committees.

[4]The relevant portion of Section 2.2 of the Plan reads, "Disqualifying Events. An employee who might otherwise qualify for the Severance Pay Plan will be disqualified by any one of the following circumstances: . . . (c) He declines a written offer of comparable employment." R1-1-B6.

the Committee moved for cross-summary judgment. After conducting limited discovery, Yochum filed an additional motion for summary judgment based on new facts, which the district court struck on the grounds that it was duplicative. The district court then granted the Committee's summary judgment motion. The district court held that comparable employment does not require identical employment, and commented that granting Yochum severance benefits after he had already started work with a new company would constitute a windfall for Yochum. Yochum appeals.

## II. DISCUSSION

A. <u>Standard of Review</u>

The district court's grant of summary judgment is subject to plenary review, and we apply the same standard of review as the district court. <u>See</u> <u>Paramore v. Delta Air Lines, Inc.</u>, 129 F.3d 1446, 1449 (11th Cir. 1997). Summary judgment shall be granted where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the facts and all reasonable inferences in the light most favorable to the non-moving party. <u>See</u> <u>Wideman v. Wal-Mart Stores, Inc.</u>, 141 F.3d 1453, 1454 (11th Cir. 1998).

4

There are three standards of review appropriate in ERISA decisions. See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109 S. Ct. 948 (1989) (comparing ERISA law to trust law and adapting the standards of review from trust law to fit ERISA cases). Where an ERISA plan does not grant the fiduciary or plan administrator discretion over distribution of benefits, the court will apply a de novo standard of review. See Marecek v. BellSouth Serv., Inc., 49 F.3d 702, 705 (11th Cir. 1995). When the plan does grant the fiduciary or plan administrator such discretion, the "arbitrary and capricious" standard applies, which is analogous to an abuse of discretion standard. See Marecek, 49 F.3d at 705. Finally, if the plan grants the fiduciary or administrator discretion, but the court finds a conflict of interest between the fiduciary or administrator and the company, a heightened arbitrary and capricious standard applies, and the court will consider this conflict in its analysis. See Brown v. Blue Cross and Blue Shield of Alabama, Inc., 898 F.2d 1556, 1566 (11th Cir. 1990) ("[W]e hold that when a plan beneficiary demonstrates a substantial conflict of interest on the part of the fiduciary responsible for benefits determinations, the burden shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self-interest.") It is important to note that where the district court agrees with the ultimate decision of the administrator, it will not decide whether a conflict exists. It is only when the

5

court disagrees with the decision that it looks for a conflict and, when one is found, reconsiders the decision in light of this conflict. See Maracek, 49 F.3d at 705.

The district judge applied the arbitrary and capricious standard, which was appropriate because the Committee did have discretion over the distribution of benefits. See R1-37-A3.[5] Because the district court agreed with the Committee's decision to deny Yochum's request for benefits, it was unnecessary to determine whether a conflict of interest existed between the Committee and NationsBank. We, however, disagree with the Committee's decision, and must take into account any potential conflicts of interest while we decide whether the decision was arbitrary and capricious.

Where the funding for severance plans comes directly from the coffers of a company, rather than through a trust, there is a conflict of interest. See Brown, 898 F.2d at 1562 (finding that the heightened arbitrary and capricious standard must be applied when the ERISA plan was administered by an insurance company which paid benefits directly from its own assets). In this case, we find that there was a conflict of interest in the benefits decision by the Committee, because severance

---

[5]Yochum argues that the NationsBank Committee did not have authority over his request, because the Plan called for the Barnett Banks Committee to make the decision. However, the record reflects a legal transfer of fiduciary responsibility from the Barnett Banks Employee Benefits Committee to the NationsBank Benefits Appeals Committee; thus, the district court applied the correct standard. See R3-84-7.

benefits are paid directly from the coffers of NationsBank, so a decision to award severance benefits would take money directly away from NationsBank. At the same time, members of the Committee are NationsBank employees, and their decision to deny benefits saves NationsBank a large sum of money. NationsBank had already paid money to Yochum in fulfillment of other contracts, and Yochum was now working for NationsBank's strongest competitor in the region. Based on these conflicts of interest, we will apply the heightened arbitrary and capricious standard, as the district court would have done if necessary.

B. "Comparable" Employment

Under the plain language of the Plan, Yochum would not qualify for severance payments if he "declined a written offer of comparable employment" from NationsBank as a result of the merger.[6] NationsBank contends that, because Yochum would have more responsibility in his new position, and because he was guaranteed the same salary and incentives for one year, the job they offered was comparable to Yochum's job with Barnett Bank. The Committee contends that because stock options do not guarantee income, as stocks rise and fall regularly,

---

[6]Section 1.8 of the Barnett Banks Inc. Severance Pay Plan reads, **"Comparable Employment means a job with the Company or an Employer or an Affiliated Company that is consistent with the Employee's previous position, experience, education, capabilities and responsibilities, with equivalent compensation and benefits and similar working conditions, which is within the same distance from his or her residence to the former work location or within 35 miles of this residence to the new work location." R1-1-B3.

they are not a necessary part of a benefits package. Finally, they argue that because "comparable" can be interpreted to mean "substantially equivalent," Yochum turned down a comparable offer and is not eligible for benefits.

Yochum disagrees, pointing out that his salary and incentives will decline one year after he accepts employment with NationsBank, despite the fact that he has a two-year agreement with Barnett Bank upon a change in control. Specifically, after one year, his incentive package will decrease to about 25% of what he received from Barnett Bank. Additionally, it is undisputed that Yochum will not receive stock options from NationsBank, which were an integral part of his benefits package at Barnett Bank. We find these arguments persuasive.

We look to the plain language of Yochum's Employment Agreement with Barnett Banks ("Agreement") and the Plan to make our determination. See 29 U.S.C. §1104(a)(1)(D) ("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]"); Hunt v. Hawthorne Associates, Inc., 119 F.3d 888, 892 (11th Cir. 1997) ("Because both the plan administrator and named fiduciary must discharge their duties in accordance with the written instrument, we examine the provisions of the Plan in detail").

The purpose behind the Agreement is to "attract and retain well-qualified executives and key personnel and to assure itself of the continuity of its management. . . . The Company is concerned that in the event of a possible or threatened change in control of the Company, uncertainties necessarily arise and the Executive may have concerns about the continuation of his employment status and responsibilities and may be approached by others offering competing employment opportunities, and the Company therefore desires to provide the Executive assurance as to the continuation of his employment status and responsibilities in such event." R2-49-A1. The guarantees in the Agreement are meant to entice the Executive to stay with the Company, and the provisions should be read in that light. Section 5(c) of the Agreement guarantees that,

> During the Employment Period[7], the Executive shall receive the following compensation and benefits: . . . (c) He shall be eligible to participate on a reasonable basis, and to continue his existing participation, in annual incentive, stock option, restricted stock, long-term incentive plan, and any other incentive compensation plan which provides opportunities to receive compensation in addition to his annual base salary which are the greater of (i) the opportunities provided by the Company for executives with comparable duties or (ii) the opportunities under any such plans in which he was participating immediately prior to the Effective Date. Id. at A5.

---

[7]Under §3(b)(ii) of the Agreement, the "Employment Period" is "the period commencing on the Effective Date for the Change in Control and ending upon the last day of the month in which occurs the second anniversary of the Effective Date for the Change in Control." R2-49-A4.

9

Section 5(c) specifically guarantees that Yochum will receive stock options and incentives at least equal to what he receives from Barnett Bank for a two-year period after a change in control.

The Committee cites to a number of cases defining "comparable" to mean something different than "equivalent compensation and benefits." However, those cases are not applicable here, because "comparable employment" is defined in the language of the Plan itself to mean "equivalent compensation and benefits." Where the parties have agreed to the meaning of a word in a contract, and that word is defined therein, we will not look to case law interpreting other agreements to impose a different meaning.

Because Yochum would not have received stock options had he accepted the job with Nations Bank, and because his salary and benefits package would have decreased after one year, the new job did not provide "equivalent compensation and benefits" as required. Therefore, by turning down this offer, he did not decline an offer of "comparable employment."[8]

---

[8]The district court also determined that payment of severance benefits would constitute a windfall to Mr. Yochum, as he was never unemployed. This, however, is contrary to Eleventh Circuit precedent. See Bedinghaus v. Modern Graphic Arts, 15 F.3d 1027, 1032 (11th Cir. 1994) (citation omitted) ("[F]ederal courts have established no hard and fast rule that an individual must suffer a period of unemployment to qualify for severance benefits under ERISA. Those courts that have deemed unemployment a prerequisite to such benefits have predicated their decisions on the particular terms of the ERISA plan at issue and its application to the specific facts before them."); but see Rigby v. Rhodes, Inc., No. 95-1368-CIV-LENARD (S.D. Fla. July

C. <u>Arbitrary and Capricious</u>

Because we do not agree with the Committee's decision, we now have to decide if it was arbitrary and capricious, factoring in the conflict of interest. <u>See</u> <u>Brown</u>, 898 F.2d at 1570. If the decision were for the benefit of the Plan's beneficiaries, we might be persuaded to uphold it despite our disagreement with the result. <u>See</u> <u>Brown</u>, 898 F.2d at 1566-67 ("[A] wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries."); 29 U.S.C. §1104(a)(1)(A)(i) (the administrators of an ERISA plan are to discharge their duties "for the exclusive purpose of providing benefits to participants and their beneficiaries"). However, there is no evidence that the denial of benefits to Yochum was made with the best interests of the Plan's beneficiaries in mind.

The decision itself was arbitrary and capricious. The Committee did not include Yochum's Employment Agreement in its discussion of his claim, so they had no true basis upon which to decide that the employment offer was comparable. They determined that the offer was comparable, despite the fact that Yochum

---

10, 1996), <u>aff'd</u>, 121 F.3d 722 (11th Cir. 1997).

would no longer be receiving stock options, which was an integral part of his benefits package. When they made this decision, they were operating under the incorrect information that Yochum's salary and benefits were guaranteed for two years when, according to a later correction of several affidavits and the amended minutes of the relevant Committee meeting, they were only guaranteed for one year. Finally, the Committee denied Yochum the right to appeal their determination, a right which is guaranteed under the plain language of the ERISA statute. See 29 U.S.C. §1133(2) ("In accordance with regulations of the Secretary, every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."). The Committee denied Yochum this opportunity, and then later asked the court to ignore several of Yochum's arguments because they had not been raised before the Committee. The denial of Yochum's claim based on false and incomplete information was arbitrary and capricious, in that the plain language of the Plan and the Agreement were violated. Further, the denial of Yochum's right to appeal this decision to the Committee and the attempt to use that against him later makes the violation even more egregious.

## III. CONCLUSION

In order to disqualify Yochum from receiving severance benefits, NationsBank had to show that he declined a written offer of comparable employment. Because stock options are an important part of executive compensation, and because his benefits would have decreased after one year, the job offer made by NationsBank was not comparable as defined by the Plan. The denial of Yochum's right to appeal was a further violation of ERISA. The decision made by the Committee was arbitrary and capricious, and should not be upheld. Therefore, we REVERSE the judgment of the district court and REMAND to the district court with instructions to enter summary judgment for the Plaintiff.