Richard CARNAGHI, Plaintiff,

v.

PHOENIX AMERICAN LIFE
INSURANCE COMPANY,
Defendant.

No. CIV.A.1:01–CV–1645–J.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 25, 2002.

John Thomas Dufour, Van Pelt & Dufour, Carrollton, GA, for Plaintiff.

H. Sanders Carter, Jr., Kenton Jones Coppage, Carter & Ansley, John Thomas Sparks, Matthew Jude Jewell, Alfred L. Evans, III, Austin & Sparks, Atlanta, GA, for Defendant.

## *ORDER*

FORRESTER, District Judge.

This matter is before the court on Plaintiff's motion for summary judgment [10–1]; Defendant's motion for summary judgment [12–1]; and Defendant's motion to exceed the page limit [13–1].

## I. Background

### A. Procedural History

Plaintiff, Richard Carnaghi, filed suit on May 9, 2001, in the Superior Court of Douglas County, against Defendant, Phoenix American Life Insurance Company,[1] alleging that Defendant arbitrarily and capriciously denied his application for long term disability benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Plaintiff seeks an award of disability benefits, attorney's fees, and litigation expenses. Defendant removed the suit to this court on June 22, 2001, and the parties filed the instant cross-motions for summary judgment.

### B. Facts

Plaintiff was employed by Douglas Communications, Inc., as a cellular telephone salesman. Defendant provided a group long-term disability policy ("the Plan") to employees of Douglas Communications. Under the terms of the Plan, Defendant was identified as the fiduciary with "discretionary authority to make claim, eligibility and other administrative determinations ... and to interpret the meaning of plan terms and language." Plan, at 27. Under the Plan, an employee is entitled to disability benefits in the first thirty-six months if the employee is "unable to perform all of the material and substantial duties of [his] regular occupation." *Id.* at 10. In order to receive benefits after thirty-six months, an employee must be "unable to perform all the material and substantial duties of Any Occupation." *Id.*

Plaintiff contends that he "totally ceased his employment with Douglas Communications due to disability" on April 18, 1998. Pl.'s Statement of Undisputed Material Facts, ¶ 3. It is undisputed, however, that Plaintiff did return to work from July 20 through July 24, 1998. Furthermore, the administrative record shows that Plaintiff had last worked on January 17, 1998, and then filed a claim for short-term benefits on January 26, 1998. *See* Administrative Record, at 300 (supporting medical information provided by Dr. Kelvin Burton). In May 1998, Plaintiff submitted a claim for long-term disability benefits. *Id.* at 259. Drs. Kelvin Burton, Jack Talley, and Derrell Ray provided supporting medical documentation. · *See id.* at 216–17, 225, and 260. Defendant began paying benefits as of April 18, 1998, the date on which the 90–day elimination period in the Plan expired. *Id.* at 210.

On June 30, 1998, Dr. Ray released Plaintiff to return to work "without restrictions" on June 30, 1998. *See* Pl.'s Exh. V. Plaintiff returned to work from July 20, 1998 through July 24, 1998, before again leaving work. *See* Administrative Record, at 146–49, 151. Defendant paid Plaintiff disability benefits through June 29, 1998 and again on August 11, 1998. *See id.* at 153, 208–09.

In the fall of 1998, another of Plaintiff's physicians, Dr. Chester Miller, diagnosed

1. Defendant is now known as the GE Group Life Assurance Company.

Plaintiff with severe major depressive disorder and determined that he was disabled from doing his job. *See* Pl.'s Exh. F. Plaintiff was also seen by Dr. Dick Maierhofer who evaluated Plaintiff's claim for Social Security disability benefits. Dr. Maierhofer concluded that Plaintiff's prognosis was "very limited for employment." *See* Pl.'s Exh. H. The Social Security Administration later determined that Plaintiff was eligible for benefits. *See* Pl.'s Exh. I.

Defendant forwarded Plaintiff's record to Concentra Preferred Systems ("Concentra") on October 1, 1998, for an independent review by Dr. Bennett Enowitch, a board certified psychiatrist, and Paul N. Dwyer, a disability case manager. *See* Pl.'s Exh. T. Concentra determined that "[t]here is insufficient objective evidence to support a current psychiatric disability." *Id.* at unnumbered page 2. On October 21, 1998, Defendant denied Plaintiff's claim for disability benefits after August 11, 1998, because there was "no proof of continuing disability." Pl.'s Exh. D.

On February 12, 1999, Plaintiff pursued an appeal of this decision and forwarded additional documentation to Defendant. *See* Pl.'s Exh. J. Defendant then sought another independent review from U.S. Medical Review conduct by Dr. Stephanie Heidelberg, a board-certified psychiatrist. *See* Administrative Record, at 31–35. Concentra's prior recommendation was not included in the materials sent to Dr. Heidelberg. Dr. Heidelberg also concluded that Plaintiff's records did "not support either a physical or a mental disability." *Id.* at 35. In a letter dated May 10, 1999, Plaintiff was notified that the appeal process upheld the original decision to deny Plaintiff's benefits based on insufficient objective evidence to support a current psychiatric disability. *See* Pl.'s Exh. E; Administrative Record, at 36–40.

Douglas Communications ceased participating in Defendant's plan effective May 1, 1998. *See* Affidavit of Scott Hockenberry. Thereafter, coverage was provided by Unum Life Insurance Company of America. *See* Exh. A–2 to Defendant's Response to Plaintiff's Motion for Summary Judgment.

## C. Contentions

Plaintiff contends that Defendant's denial of benefits must be reviewed under a "presumptively void" standard and that Defendant's denial was arbitrary and capricious because Defendant ignored medical evidence provided by Plaintiff and disregarded the medical evidence from Plaintiff's treating physicians. Plaintiff also asserts that Defendant is operating under a conflict of interest because it is evaluating claims for disability benefits while paying those benefits out of its own assets. Plaintiff additionally argues that although the Plan provides that coverage for mental disability lasts only 24 months, he is now entitled to additional disability coverage based on a back ailment. Plaintiff requests that the court remand Plaintiff's file to the Plan administrator for a determination of whether Plaintiff was disabled due to a back injury as of April 2000, the date that coverage of Plaintiff's disability due to depression would end.

Defendant responds that its decision to deny disability benefits was not arbitrary and capricious even under the "heightened" standard used when evaluating determinations made by a conflicted plan administrator because it was based on the results of two independent medical examinations. Defendant also asserts that Plaintiff's current claims rely on medical information that was not available to Defendant at the time Defendant denied Plaintiff's appeal for coverage. Defendant further contends that it is not liable for coverage of Plaintiff's back disability because the onset of that injury occurred after the date on which Defendant ceased

providing coverage for Douglas Communications employees.[2]

## II. Discussion

### A. Standard of Review

ERISA provides a cause of action for a plan participant or beneficiary "to recover benefits due him under the terms of his plan . . . ." 29 U.S.C. § 1132(a)(1)(B). The statute, however, does not provide the standard for reviewing decisions of a plan administrator to deny benefits. To fill this gap in the statute, the Supreme Court has held "that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the administrator has discretionary authority, however, the standard of review is "arbitrary and capricious." *See Brown v. Blue Cross & Blue Shield,* 898 F.2d 1556, 1562–63 (11th Cir.1990).

■ Plaintiff contends that the Eleventh Circuit reviews decisions made by an ERISA administrator operating under a conflict of interest under a "presumptively void" standard. The court disagrees. As the court previously explained in *Jones v. Champion International Corporation,* Civil Action No. 00–CV–1186–JOF, the Eleventh Circuit has established a "heightened" arbitrary and capricious standard for reviewing the legal interpretations of a plan administrator operating under a conflict of interest. The issue presented, here, however, is what standard is used when reviewing the factual determinations of a conflicted plan administrator. When reviewing the factual determination of a plan administrator not operating under a

conflict of interest, the Eleventh Circuit held that such a decision must be "reasonable." *See Paramore v. Delta Air Lines, Inc.,* 129 F.3d 1446 (11th Cir.1997). The Eleventh Circuit, however, has yet to decide a standard for the review of factual determinations made by a conflicted plan administrator.

As the court explained in *Jones:*

Under the line of cases dealing with the legal interpretation of the plan, if the administrator's interpretation was legally correct, the inquiry ends because the conclusion would be the same under any of the three standards of review. *See, e.g., Yochum v. Barnett Banks, Inc. Severance Pay Plan,* 234 F.3d 541, 544 (11th Cir.2000) (per curiam); *Collins v. American Cast Iron Pipe Co.,* 105 F.3d 1368, 1370 (11th Cir.1997); *Marecek v. BellSouth Telecommunications, Inc.,* 49 F.3d 702, 705 (11th Cir.1995). While legal certainty is possible in the interpretation of a document, it is seldom possible in medical diagnosis. Therefore, it seems that instead of focusing on whether a factual determination is correct, the inquiry ought only to be whether the decision is reasonable or made in good faith if any deference is to be given to the discretion accorded the fiduciary. Where there is a "conflict of interest," the inquiry at most seems to be whether the decision is objectively reasonable. This may be inferred from *Levinson [v. Reliance Standard Life Insurance Co.,* 245 F.3d 1321 (11th Cir.2001)]. The court held that the findings of the fiduciary were arbitrary and capricious because there was no reasonable basis for its denial of the claim, particularly where the insurer did not seek "any independent medical evidence to conclude that Levinson did not meet the definition of disabled." 245 F.3d at 1326–27 (footnote omitted).

**2.** The court GRANTS Defendant's motion to exceed the page limit [13–1].

*Id.* at 8. The court now turns to reviewing the factual determinations of the Plan administrator, here, under this "objectively reasonable" standard.

## B. Disability Benefits Related to Depression

■ The court may review the decision of the Plan administrator only on the basis of those materials available to the administrator at the time the final appeal decision was rendered. *See Jett v. Blue Cross & Blue Shield,* 890 F.2d 1137 (11th Cir.1989). It is undisputed that Defendant rendered its final decision on appeal on May 10, 1999. Plaintiff contends that additional materials related to his medical condition were forwarded to the Plan administrator on February 12, 1999, March 8, 1999, and June 30, 1999. Any materials received by the Plan administrator after May 10, 1999, however, may not be considered by the court.

From the documents proffered by Plaintiff, himself, it is clear that the finding of the Social Security Administration awarding disability benefits to Plaintiff was not made until June 15, 1999. *See* Pl.'s Exh. I.[3] Similarly, Plaintiff forwarded additional information to Defendant on June 30, 1999, including a letter from Dr. Miller, which the court cannot consider because it was not part of the administrative record at the time Plaintiff's appeal was denied. The same result is reached with respect to information contained in Plaintiff's Exhibit M (dated January 12, 2001); Exhibit N (July 11, 2000); and Exhibit O (September 6, 2000).

Prior to the final appeal decision, Plaintiff's counsel did forward to Defendant a copy of Dr. Miller's psychiatric evaluation of August 11, 1998, October 22, 1998, and October 30, 1998. Plaintiff also forwarded several notes from Dr. Kelvin Burton in April 1998. *See* Pl.'s Exh. J. Plaintiff contends that Concentra had available only Dr. Miller's office notes from September 22, 1998, when it conducted its review. *See* Plaintiff's Motion for Summary Judgment, at 13. The documentary evidence shows, however, that Concentra received information from Plaintiff's treating physician, Dr. Miller, on October 13, 21, and 28, 1998. *See* Pl.'s Exh. T, at unnumbered 2. In addition, Concentra reviewed office notes from Dr. Derrell Ray dated May 7, and 21, 1998; a letter from Dr. Ray dated June 29, 1998; a psychiatric evaluation by Dr. Miller performed on August 11, 1998; letters from Dr. Miller dated August 28, 1998 and September 18, 1998; and office notes of Dr. Miller dated September 22, 1998. *Id.* Concentra's report specifically notes the opinion of Dr. Miller that Plaintiff was currently disabled as of October 13, 1998. *Id.* at unnumbered 3. Thus, Concentra not only reviewed prior documentation, but also contacted Dr. Miller on three occasions to obtain contemporaneous information on Plaintiff's condition before ultimately concluding that "[t]here is insufficient objective evidence to support a current psychiatric disability." *Id.* at unnumbered page 2.

Additionally, on March 8, 1999, Plaintiff forwarded a psychological evaluation prepared by Dr. Dick Maierhofer. *See* Pl.'s Exh. K. Contrary to Plaintiff's assertions, Defendant reviewed these materials sent by Plaintiff on February 12, 1999 and March 8, 1999, and forwarded them to a medical consultant. *See* Pl.'s Exh. R. Dr. Heidelberg's report, dated April 26, 1999, specifically noted that she reviewed the

---

**3.** The court also notes that even were that information available to Defendant in the relevant time frame, findings of disability made by the Social Security Administration are not dispositive in a claim for denial of benefits under ERISA. *See Paramore v. Delta Air Lines,* 129 F.3d 1446, 1452 n. 5 (11th Cir. 1997).

psychological testing done by Dr. Maierhofer in making her evaluation. *See* Administrative Record, at 31. Dr. Heidelberg also reviewed progress notes and correspondence from Drs. Burton, Ray, Talley and Miller. *Id.* After reviewing this information, Dr. Heidelberg determined that Plaintiff's records did "not support either a physical or a mental disability." *Id.* at 35.

■ The court finds that Defendant and its independent medical reviewers did not "ignore" evidence provided by Plaintiff, but rather the independent medical reviewers determined that the medical evidence provided by Plaintiff was insufficient. The gravamen of Plaintiff's complaint, then, is that the two independent medical reviews did not give enough weight to the documentation provided by Drs. Miller and Burton. *See* Pl.'s Exh. J, at 3 (the evaluations of Drs. Miller and Burton "should be given the greatest weight."). However, as the court stated above, the Plan administrator must resolve factual conflicts in the evidence and even under a heightened arbitrary and capricious standard of review, Plaintiff has failed to show that Defendant's determinations were objectively unreasonable or otherwise improper. The court finds that Defendant's denial of benefits was based on sufficient and independent reports from two independent medical examiners. Therefore, the court finds the decision to be objectively reasonable and, thus, neither tainted by self-interest nor otherwise arbitrary and capricious. As such, the court grants Defendant's motion for summary judgment.[4]

**C. Disability Benefits Related to Back Injury**

■ Plaintiff alternatively contends that he is currently entitled to disability benefits based on back pain. The decision about whether Defendant's Plan would cover Plaintiff's claim for disability due to back pain is a legal determination. Under the heightened arbitrary and capricious standard set forth in *Brown*, the court finds that the Plan administrator's determination was legally correct, as explained below. As such, no further inquiry is required. *See, e.g., Yochum v. Barnett Banks, Inc. Severance Pay Plan*, 234 F.3d 541, 544 (11th Cir.2000) (per curiam).

The first indication that Plaintiff had a back injury occurred on July 31, 1998, when Plaintiff provided a note that he was under the care of the Southeastern Chiropractic Clinic. *See* Pl.'s Exhs. U, W, and X.[5] This date is after the termination of Defendant's coverage.[6] Under Defen-

---

4. Because the court grants Defendant's motion for summary judgment, the court denies Plaintiff's motion for summary judgment.

5. Plaintiff's contention that he stopped working on April 18, 1998, due to back pain from "a herniated lumbar disc ... that ... had not yet been properly diagnosed," Pl.'s Motion for Summary Judgment, at 5, is unsupported in the record.

6. In his response to Defendant's statement of undisputed material facts, Plaintiff contends that he was not aware Defendant contended a termination date of coverage until after the close of discovery. *See id.*, ¶ 6. Plaintiff then argues that he denies "this assertion, not sub-

stantiated by any documentation, where the Defendant voluntarily paid long term disability benefits after this date." *Id.* Defendant, however, did substantiate the transfer in coverage from Defendant to Unum Life Insurance Co. *See* Affidavit of Scott Hockenberry and Exh. A–2 to Defendant's Response to Plaintiff's Motion for Summary Judgment. Furthermore, Plaintiff's response misapprehends the significance of the termination date. Defendant contends that the onset of Plaintiff's alleged disability due to back pain occurred after the termination date of Defendant's policy and is, therefore, not covered by Defendant's policy. That contention is not relevant to whether Defendant continued, after the termination of coverage, to pay Plain-

dant's plan, a successive disability "due to a Sickness or Injury that is unrelated to the cause of your prior Period of Disability ... will be considered a new Period of Disability." Plan, at 22. However, the New Period of Disability "must commence while you are insured under the policy." *Id.* at 10. Here, it is clear that the earliest indication of Plaintiff's back pain was on July 31, 1998, after the termination of Defendant's plan with Douglas Communications. The Unum insurance policy purchased by Douglas Communications to be effective as of May 1, 1998, provides that if "you are absent from work due to injury, sickness, temporary layoff or leave of absence, your coverage will begin on the date you return to active employment." *See* Unum Policy, at page Employee–1, attached as Exh. 1 to Defendant's Response to Plaintiff's Motion for Summary Judgment. Plaintiff did return to work on July 20, 1998, after the initiation of Unum's coverage. Defendant, therefore, is not liable for a disability whose onset occurred after the termination of Defendant's Plan. As such, the court does not find that remand to Defendant's Plan administrator is appropriate under these circumstances, and the court GRANTS Defendant's motion for summary judgment with respect to Plaintiff's claim for disability benefits related to the back injury.

## III. Conclusion

The court DENIES Plaintiff's motion for summary judgment [10–1]; GRANTS Defendant's motion for summary judgment [12–1]; and GRANTS Defendant's motion to exceed the page limit [13–1].

tiff for a disability (depression) that initiated

within the coverage period.